/ PETERS and another *against* the Phœnix Insurance Company.

ACTION on a policy of insurance on the brig *Madeira*, at and from *Philadelphia* to *Charleston*, and at and from thence to *Madeira*.

The brig arrived in safety at *Charleston*, and after remaining there some time, sailed on the 16th *October*, 1812, for *Madeira*. In going over the bar of *Charleston* she struck several times very hard, and on proceeding to sea, was soon found to be in a leaky condition. The leak increasing, it was determined, on the 24th *October*, to make the first safe harbour. Accordingly the course was altered to the westward, and on the 31st *October*, the brig arrived at *Norfolk* in *Virginia*. Here she was repaired, and having sailed again for *Madeira*, left the bay of *Chesapeake* on the 25th *November*. It was shortly afterwards discovered, that the repairs at *Norfolk* were insufficient. On searching for the leak, a knot hole was found, which had been enlarged by the gnawing of rats. The hole was stopped, but the leak increased to such an alarming degree, that it was at one time determined to return to a port in the United States. This determination was afterwards changed, in consequence of better weather; the voyage was continued, and after a stormy passage, during the whole of which the leak was very considerable, the brig arrived at *Funchal* in *Madeira*, on the 21st *December*, and began to discharge her cargo. After remaining several days in the road at *Funchal*, she was obliged to put to sea, to avoid the danger with which she was threatened, from a vessel running foul of her. On the 26th *December*, while at sea, an English brig of war ran foul of her, from which considerable injury was received. On the 28th *December*, the brig came to anchor again in *Funchal* road. A survey was afterwards held, in consequence of which she was condemned and sold.

The plaintiffs claimed for a total loss, and Judge YEATES, before whom the cause was tried, submitted it to the jury as

The law implies no warranty of seaworthiness, except at the commencement of the voyage. Therefore, when a vessel which has received damage, from a peril insured against, puts into port to repair, the captain, or agent, who superintends the repairs, is only bound to use due diligence. It is not necessary, that the vessel should at all events be so repaired, as to render her sea-worthy.

Where a vessel in the course of the voyage, has suffered damage to the amount of 50 per cent., the assured is entitled to recover for a total loss, notwithstanding she has performed her voyage, and been moored 24 hours in safety in the port of destination.

The Court will not grant a new trial on a point of law not made at the trial; unless the party moving for a new trial, would be without remedy if the verdict should stand.

PETERS
and another
*v.*
The Phœnix
Insurance
Company.

a matter of fact, " whether the brig, by striking on the bar " at Charleston, and meeting the subsequent hard gales and " high seas, sustained such damage, as deteriorated her at " least one half in point of value, during the course of her " voyage." If the jury should be of opinion in the affirmative, they were directed to find for the plaintiffs, to the amount of their whole demand. The verdict was in favour of the plaintiffs, and the defendants' counsel now urged the following reasons for a new trial.

1st, That it was the duty of the plaintiffs, or their agents, to put the brig in complete repair at *Norfolk*, and having gone to sea again in a condition not sufficient for the voyage, the underwriters are discharged.

2d, That the brig, having performed her voyage, and been moored twenty-four hours in safety, in the road of *Funchal*, the plaintiff, cannot recover for a total loss.

3d, That if the defendants are charged with a total loss, they are entitled to the freight earned during that part of the voyage, which was subsequent to the alleged death wound, viz. striking on the bar of *Charleston*, and ought to have been allowed for it in the verdict.

4th, That the verdict was against the evidence, on the point submitted to the jury.

The cause was argued by *Hallowell* and *Rawle*, in support of the motion for a new trial, and by *Binney* and *Chauncey*, against it.

TILGHMAN C. J. After having stated the facts, delivered the following opinion.

No authority has been produced in support of the first objection. When a ship, which has received damage, puts into port to repair, the captain, or agent, who superintends the repairs, is bound to use due diligence. But it may be impossible to make a complete repair, either for want of materials, or of skilful workmen, or of accommodations for heaving the ship down, in order to make a thorough search. This objection was not urged at the trial. If it had been, the jury might have judged, whether there had been negligence. The law implies no warranty of sea-worthiness, except at the commencement of the voyage. To say, therefore, that a ship, which has suffered damage by a peril insured against,

must, at all events, be so repaired at the port she puts into, as to render her sea-worthy, is to add to the contract a condition not contained in it.

1817.
———
PETERS
and another
v.
The Phœnix
Insurance
Company.

On the second point the counsel for the defendants seem to have fallen into an error, from not attending to the distinction between an actual total loss, (by the sinking or burning of the ship,) and that kind of loss which is total not in fact, but in contemplation of law, viz. when damage has been suffered during the voyage to the amount of 50 per cent. In such case the assured is permitted to abandon. The loss is partial in its nature, and the only question is on the amount of the damage. If under 50 per cent. the assured is not permitted to abandon; if equal to 50 per cent. or above it, he may abandon. This is the very point on which the case of *Cazalet* v. *St. Barbe*,(*a*) turned. The jury found the damage to be only 48 per cent.; and for that reason only the plaintiff could not recover for a total loss. About the payment of 48 per cent., however, there was no dispute; for the defendant brought it into Court upon his plea of tender. But the defendant's argument in the present case leads to this conclusion; that the plaintiffs could not have recovered even for a partial loss below 50 per cent.; a proposition so contrary to justice and common experience, that it will not be seriously asserted. Two cases were cited by the defendant's counsel, which shall be noticed. In *Lockyer* v. *Offley*, (1 Term Rep. 252.) after the ship had been moored twenty-four hours, she was seized for an act of smuggling committed by the captain during the voyage, which amounted to barratry. It was held that the underwriters were not liable. The reason is plain; there was no loss till seizure, and whether a seizure would ever be made was uncertain, until it actually was made. At the time that the policy expired therefore, (twenty-four hours after the mooring of the ship,) the assured had lost nothing; which is altogether different from the present case, where the damage had been sustained before the mooring of the ship. In the other case, *Meretony* v. *Dunlope*, cited by Justice *Willes*, in *Lockyer* v. *Offley*, the ship received her death wound during the voyage, but was kept afloat by pumping, till after the policy was expired; and held that the underwriters were

(*a*) Cited in 2 *Marsh,* 583.

1817.

PETERS
and another
*v.*
The Phœnix
Insurance
Company.

discharged.   We have no report of this case which informs us of the nature of the policy.   It was probably of that kind which precluded the assured from recovering for a partial loss; otherwise this decision would be contrary to other cases of unquestionable authority, and could not be law.

The defendant's third objection is, that if they pay for a total loss, they are entitled to the freight earned by the brig after she received her death wound, which is supposed to have been on the bar near Charleston. If this point had been urged at the trial, and the Judge had given his opinion against the defendants, it would have been proper to take it now into consideration. But the claim of freight was not made then, and therefore cannot be a reason for a new trial. If indeed the defendants had a just claim, and would be without remedy in case the verdict stands, it might be a strong reason for listening to the argument, even at this late stage. But it is not so. The defendants not having brought the matter of freight before the jury in this action, are at liberty to prosecute it in another action.

The last reason offered for a new trial is, that the verdict was against the weight of evidence.   Without entering into an examination of the evidence, suffice it to say, that the Judge who tried the cause is satisfied with the verdict; and although it is a case which admits of plausible arguments on both sides, yet the scale ·does not preponderate on the side of the defendants so decidedly as·it ought to do, to justify the Court in granting a new trial. I am, therefore, of opinion that the verdict should stand. ·

YEATES J. The charge which I gave to the jury on the trial has not been questioned in point of law.   It appeared clear to me, that if a vessel received her death wound by events which occurred during the voyage insured, without default in the master or crew, it was of no moment when the loss was ascertained, although subsequent to her arrival at her port of destination.   It was left to the jury to decide whether the injuries were received during the outward passage to the island of *Madeira;* and the case chiefly turned on the credibility of the testimony of the captain and mate. I gave the jurors the instructions which I deemed proper as to weighing their testimony, telling them, at the same time, that, as mercantile men, they were much more competent

judges of the facts than I could be; and that it was their peculiar province to determine the credibility of the witnesses. I see no reason to disapprove of their verdict, and therefore concur in denying a new trial.

GIBSON J. expressed his concurrence.