UTICA,<br>July, 1836.<br><br>Pezant<br>v.<br>The National<br>Ins. Co.

Proceedings confirmed.

---

PEZANT and others *vs.* THE NATIONAL INSURANCE COMPANY.

Where there is an insurance upon a ship, and the vessel sustains injury to an amount exceeding half her value, the assured cannot abandon as for a a technical *total loss*, if he is the owner of the freight and cargo, and the freight and cargo be liable to such an amount of general average contribution, as when deducted reduces the estimated expense of repairs below half the value of the vessel, allowing the deduction of one-third new for old; he is only entitled to recover as for a *partial loss*.

So also *it was held* in this case, that the vessel having arrived at the port of her destination, where her owners resided, in a repairable state, the assured had no right to abandon as for a technical *total loss*.

ERROR from the superior court of the city of New-York. The National Insurance Company insured a brig belonging to the plaintiffs, on time, for one year from 8th February, 1832, the vessel being *valued* at $6000. On the 2d June, 1832, the brig, laden with a cargo of sugar, sailed from the port of *St. Thomas* bound to *Charleston*; on her voyage, to wit, on 7th June, she encountered a hurricane by which she was upset, the water rushed into her fore scuttle and companion way, and she was rapidly filling and sinking and in the act of turning bottom up, when the mariners succeeded in cutting away the weather rigging, the masts went and the vessel righted, reduced almost to an entire wreck. She then proceeded under jury masts until the 20th June, when she was taken in tow by a pilot boat, and on the next day ran into the dock at Charleston. A survey was had of the vessel by the *port wardens*, who made a report that the necessary repairs would ex-

UTICA,
July, 1836.

Pezant
v.
The National
Ins. Co.

ceed the value of the vessel, and recommended her to be sold; and she was accordingly sold at auction for $750. The wardens concurred in an estimate that the repairs would amount to about $5000, and that the vessel after she was repaired would not have been worth more than the expense of her repairs. The cargo belonged to the plaintiffs, who resided at Charleston; its invoice value was $5600; it was greatly damaged at sea, and was sold at Charleston for $2292. The freight amounted to $500. On 30th June the plaintiffs abandoned to the insurance company and claimed as for a *total loss*. The company refused to pay, insisting that the amount chargeable for *general average* should be excluded from the estimates for repairs, and if so, the claim as for a technical total loss could not be sustained. On the part of the defendants it was proved, that the purchasers of the brig had her repaired at an expense of $2850, and that on the 20th October, 1832, she sailed on a voyage perfectly sea-worthy; it however appeared that she would require to be coppered, which would add $800 to the expense. Mr. Justice *Oakley* charged the jury that the plaintiffs could not recover *as for a total loss*, on the ground that the damage, according to the estimate of repairs, (allowing the deduction of one-third new for old,) exceeded half the value of the vessel in her repaired state at Charleston, provided the general average contribution in respect of the freight and cargo, (the ship, cargo and freight all belonging to the assured,) reduced such estimated amount, after such deduction, below one-half such value at Charleston; nor could the plaintiffs recover as for a total loss, if the damage according to the estimate of repairs, (allowing one-third new for old,) did exceed one-half of the value of the vessel at Charleston, her port of destination, her voyage being then terminated and her owners residing there, unless the vessel was so damaged that the expense of her repairs would be equal to or exceed her value when repaired. To which charge the plaintiffs excepted. The jury found a verdict for the plaintiffs for $2550,59. The plaintiffs sued out a writ of error.

*D. Lord, jun.* for the plaintiffs, insisted upon the following points: 1. That the vessel being specifically damaged to more

than half her value, the plaintiffs were entitled to recover as for a total loss; 2. That the loss depending upon an actual deterioration of the vessel during the voyage, did not cease to be *total* from the mere fact of her arrival at the port of destination, or that the assured had funds applicable to the insurers in their hands, from general average contribution from freight and cargo. The fact that the cargo and freight were subjects of general average contribution did not affect the *right to abandon;* it only affected the amount which the plaintiffs were entitled to recover, and gave the defendants the right to claim a deduction accordingly in the making up of the verdict; and 3. That the rule that a vessel cannot be abandoned as a total loss in her home port, unless so damaged that her repairs will amount to her repaired value, does not afford an indemnity and is not supported by authority.

*J. Anthon,* for the defendants, insisted, 1. That the vessel having reached her home port, the residence of her owners, in a repairable state, the plaintiffs were bound to repair her, and could not abandon on the estimates they had procured; 2. That the masts, spars and rigging having been cut away, the loss was the subject of general average contribution; and 3. That the plaintiffs, being the owners of the cargo and freight as well as of the vessel, the defendants are liable only for such part of the loss as upon a proper adjustment of the general average will fall upon the *vessel;* and that such loss was only a *partial loss,* whether the estimates or actual expenses were taken as the basis.

*By the Court,* BRONSON, J. From the facts detailed in the bill of exceptions, there can be no doubt that this was a case for general average contribution. The masts and rigging, at a moment of eminent peril, were cut away and lost for the common benefit of all—that being the only mode of saving either ship or cargo; and the owners of the goods and freight must contribute their just proportion towards the loss sustained by the owner of the vessel. The plaintiffs do not deny that all parties in interest must bear their just proportion of the damage which was suffered by the vessel for the common

safety; but they insist that the question of general average can have no just influence on their right to abandon as for a technical total loss. The court charged the jury that, in ascertaining whether the damage to the ship, according to the estimate for repairs, exceeded half her value in a repaired state, they should take into consideration the general average contribution in respect of the freight and cargo.

In *Lapsley* v. *Pleasants*, 4 *Binney*, 500, there was an insurance upon goods, and a great part of the cargo had been thrown overboard in a storm for the preservation of the remainder of the goods and the lives of the crew. Chief Justice *Tilghman* reviewed the cases, and came to the conclusion that the owner of the goods lost by the *jettison* could not abandon and resort in the first instance to the insurer for the whole amount of the injury, but that he should first apply for contribution to the other owners, whose property was saved. The question whether there had been a technical total loss turned upon this point; and the court held that the assured could not abandon and resort in the first instance to the insurer, and thus render total a loss which was only partial in its nature. A different rule was however laid down by this court in the case of *Muggarth* v. *Church*, 1 *Caines*, 215. That was an insurance on goods, a part of which had been thrown overboard in a storm, and the residue had been damaged by cutting away the mainmast of the vessel for the general preservation. The plaintiffs were allowed to recover their whole loss from the insurer, without resorting to the owner of the vessel for contribution. Mr. Justice *Kent*, who delivered the opinion of the court, said, "This will not lead to a multiplicity of suits any more than a different rule; for if the plaintiffs could recover only a contributory share from the defendant, they would be compelled to resort to the owner of the ship for the residue; and this suit may as well be brought by the insurer as the plaintiffs." In this case the ship and cargo were owned by different individuals. The rule does not apply where the ship, freight and cargo all belong to the same person, and when it does not appear that the other subjects are insured. *Jumel* v. *The Marine Ins. Co.*, 7 *Johns. R.* 424, 5. In the case under consideration, the plaintiffs were owners of

the ship, freight and cargo ; and if they are allowed to recover in this action the whole loss on account of the vessel, the defendants would have a right to turn round immediately and recover back from the plaintiffs that portion of the general average which ought to be borne by the freight and cargo. Such an unnecessary multiplicity of suits the law will never tolerate. The whole controversy may be settled in this action ; and there is no principle upon which the plaintiffs can be allowed to recover any thing beyond that which they will ultimately be entitled to retain.

UTICA, July, 1836.

Pezant v. The National Ins. Co.

Conceding this point, the plaintiffs still contend that the contribution, payable by way of general average on the freight and cargo, should not be taken into consideration in determining their right to abandon ; that they should be first credited as for a total loss of the ship, and then charged with the proper amount of contribution, on account of freight and cargo. But I think the judge laid down the proper rule on the trial ; and that the funds in the hands of the plaintiffs applicable to the repair of the vessel were properly taken into consideration, in determining their right to abandon. In general, the owner may abandon, where, by the happening of some event insured against, the voyage is lost, or not worth pursuing, and the projected adventure is frustrated ; or where the thing insured is so damaged and spoiled as to become of little or no value to the owner. In such cases, although the thing insured still remains *in specie*, it has been substantially lost to the owner ; and he may turn it over to the insurer, and demand the stipulated indemnity. What deterioration of the subject would warrant the insured in treating it as a total loss, was often a difficult question to determine ; and the positive rule which permits the owner to abandon, where the property has been damaged to more than half its value, depends, I think, as much upon the convenience of having some precise test for the adjustment of such questions, as it does upon the nature of the contract of insurance or the interests of commerce. 2 *Caines' Cas. in Err.* 157. But upon whatever consideration the rule was adopted, it proceeds on the ground that the insured has actually lost more than one-half of the capital em-

ployed in the adventure; and such was not the case with the plaintiffs at the time of the abandonment. Although the ship had suffered a deterioration to more than half its value, the plaintiffs had a fund in their hands, growing out of the adventure, and applicable to the loss, which would reduce the damages below the amount which would authorize an abandonment. For the purpose of illustration, let it be supposed that the damage to the ship from the perils insured against was sixty *per centum* on the value, and that the contribution on account of freight and cargo amounted to forty *per centum* on the value of the ship; as owners of the freight and cargo, as well as the ship, the plaintiffs may properly be regarded as having the amount of contribution in their hands, and the actual loss would then only amount to twenty per centum, or one-fifth of the value of the subject insured. To allow the owner, under such circumstances, to break up the adventure, and turn the property over to the insurer, would, I think, be carrying the doctrine of constructive total loss to a length which is neither warranted by any adjudged case, nor the nature of the contract between the parties.

But there is another, and I think, a controlling question in this case. The vessel had completed her voyage, and reached the port of destination, where the owners resided, in a repairable state, before the abandonment was made. Under such circumstances the assured has not the same right to abandon, on the ground of a merely technical total loss, as he would have if the vessel were in some other port, and unable to complete the voyage. *Marshall,* (*Ins. p.* 486,) says, " if a ship, insured for a given voyage, arrive at her port of destination, and there remain 24 hours moored in safety; or if she be insured for a *term,* and she survive the term; any injury which she may have sustained during the voyage, in the one case, or during the term in the other, *however great,* can only amount to a partial loss. So, in the case of an insurance on goods; the insurer contracts that they shall arrive safe at the port of delivery, or if not, that he will indemnify the insured. If they specifically remain, and are actually landed at the port of delivery, *however damaged in the voyage,* the injury will amount but to a partial loss; unless they be rendered of *no value,* and

*altogether useless ;* for then the loss is total." The same rule was laid down by this court, in the case of *Parage* v. *Dale,* 3 *Johns. Cas.* 156. That was an insurance on the ship, from *New-York* to *Trinidad,* and from thence to *St. Thomas.* The brig reached *Trinidad,* but on her way from that port to *St. Thomas* was captured by a *French* privateer, and three days afterwards was recaptured by an *American* frigate, and carried to *St. Christopher's.* After paying salvage, the brig sailed for *St. Thomas,* and from thence to *New-York,* where she arrived, and the assured then abandoned to the underwriters, claiming a total loss. Mr. Justice *Radcliff,* who delivered the opinion of the court, said, " the voyage insured was wholly performed, and I know of no case in which the insured can abandon, after the voyage is completed, and he is informed that it is so. The object of the insurance is then at an end, and if any loss has been sustained, the parties must be governed by the circumstances of the case, as they are then found to exist. The contract is satisfied, if that loss is paid, and it can, of course, be no other than a partial loss." There was another question in the case equally fatal to the plaintiff's claim ; but the doctrine laid down in relation to an abandonment in the home port, after the voyage was completed, has not been departed from in any subsequent case ; and must now be regarded as the settled rule on that subject in this State.

I think the counsel failed in the attempt to show that a different rule prevailed elsewhere, unless it be in *Pennsylvania. Phillips on Ins.* 400; after referring to the case of *Parage* v. *Dale,* remarks, that " there appears to be no reason why the ship may not be abandoned at the port of destination, if she arrives there in a disabled state, *not capable of being repaired, or not worth repairing."* This does not differ materially from the doctrine laid down by the judge on the trial. In *Ralston* v. *The Union Ins. Co.* 4 *Bin.* 386, the ship had reached her port of discharge in a damaged state. A verdict which had been rendered for the plaintiff, on the ground of a constructive total loss, was set aside ; but nothing was said, either by the court or the bar, on the question under consideration. In *Peters* v. *The Phœnix Ins. Co.* 3 *Serg. & Rawle,* 25, the ship had reached her destination, and the plaintiff recovered as for a to-

UTICA, July, 1836.

Pezant v. The National Ins. Co.

tal loss; but Chief Justice *Tilghman,* who delivered the leading opinion, took no notice whatever of the question whether the assured could abandon after the voyage had been performed. The case of *Wood* v. *The Lincoln & K. Ins. Co.* 6 *Mass. R.* 479, is, I think, an authority against the plaintiffs. That was an insurance on the ship for one year. On her way home she was stranded on rocks, and while in a perilous situation the owners offered to abandon, but the offer was not accepted. The vessel soon afterwards sunk, but she was weighed within a few days, and brought to the wharf in her port of destination. The court held that stranding merely was not a sufficient ground for abandoning, and the plaintiff had consequently acquired nothing by the offer to abandon, while the vessel lay upon the rocks, before she sunk. And in relation to the subsequent rights of the parties, Chief Justice *Parsons* said, " to enable the owner to abandon, there must be, at some period *during the voyage,* a total loss, either real or constructive; but in the present case no such loss has happened. The vessel has not been lost, nor has the voyage been defeated; but it appears that *the voyage has in fact been performed;* and that the vessel was in safety *at her destined port.*" He then observed, that it did not appear what degree of injury the vessel had sustained, and that the court could not presume " that the injury was such as rendered her *not worth repairing.*" The plaintiff was only permitted to recover for a partial loss. It was said, in the present case, that the plaintiffs had a perfect right to abandon, after the vessel was injured, and when she was taken in tow by the pilot boat; and that there was no reason why the subsequent arrival of the brig in her port of destination should take away that right. The rule in England is in some respects different from ours; but in this country the validity of an abandonment depends on the facts as they actually exist at the time the abandonment is made. When rightfully made, it is conclusive between the parties. The rights flowing from it will not be divested by any subsequent events which change the situation of the property, so as to make that which was *total* a *partial* loss only; and on the other hand, if the abandonment was not warranted by the actual state of things at the time, it will not help the case of the

assured to show that at some prior period his right to abandon could not have been questioned. *Church* v. *Bedient,* 1 *Caines' Cas. Err.* 21. *Depau* v. *The Ocean Ins. Co.* 5 *Cowen,* 63. 6 *Mass. Rep.* 479. 3 *Mason,* 27. 10 *East,* 329. 4 *Maule & Selw.* 394.

UTICA, July, 1836.

The law was, I think, correctly expounded by the judge on the trial. He charged the jury, in substance, that the plaintiffs could not recover as for a total loss, unless the vessel was so damaged that the expense of her repairs would be equal to, or exceed her value, when repaired. There is no complaint that the partial loss, for which the plaintiffs have recovered, was not properly adjusted.

Judgment affirmed.