[PHILADELPHIA, FEBRUARY 15, 1841.]

EYRE and Another *against* THE MARINE INSURANCE COMPANY.

A vessel was insured " for and during the term of twelve calendar months, ending on the 10th of November, 1838, with liberty of the globe; and if at sea at the expiration of the said twelve months, the risk to continue at the same rate of premium until her arrival at her port of destination in the United States." " Beginning the adventure upon the said vessel, &c. for twelve months from November, 10, 1837, as aforesaid, and so shall continue and endure until the said vessel shall be safely arrived at November, 10, 1838, at noon, with liberty of the globe, as aforesaid, and until she shall be moored twenty-four hours in safety," &c. The order for insurance was in the words of the first clause above stated. The vessel sailed from Philadelphia in November, 1837, for South America, for the purpose of freighting, and took on board a cargo entirely on freight, and sailed on the 9th of October, 1838, for the island of Jersey, in the British Channel, for orders. On the 10th of November, 1838, she was at sea on the voyage to Jersey; and while still at sea, in December, 1838, encountered a gale, which did her great damage. *Held,* that on the true construction of the contract, the underwriters were not liable after the expiration of the year, unless the vessel should be on her voyage to her port of destination in the United States; and therefore that they were not answerable for the loss suffered in the gale of December, 1838.

THIS was an action of debt, brought by Manuel Eyre and Charles Massey, trading as Eyre & Massey against the Marine Insurance Co., of Pennsylvania, upon a policy of insurance, executed by the defendants, the material words of which were as follows:

(Eyre *v.* Marine Insurance Co.)

" Whereas, Eyre & Massey, as well in their own name, as for and in the name and names of all and every other person or persons, to whom the property hereby insured doth, may, or shall appertain, in part, or in the whole, doth make insurance, and cause themselves and them, and every of them to be insured, in the sum of eight thousand five hundred dollars, lost or not lost, at and from
For and during the term of twelve calendar months, commencing this day at noon, and ending on the 10th day of November, 1838, at noon, with liberty of the ·globe; and if at sea at the expiration of said twelve months, the risk to continue at the same rate of premium until her arrival at her port of destination in the United States, upon the body, the tackle, apparel, and other furniture, of the good brig, called the Delight, of the burthen of       tons, or thereabouts, whereof is master for this present voyage, Carmick, or whosoever else shall go for master in the said vessel, or by whatsoever other name or names the said vessel, or the master thereof, is, or shall be named or called : beginning the adventure upon the said vessel, tackle, apparel, and other furniture, at and from       for twelve months, from November 10, 1837, at noon, as aforesaid, and so shall continue and endure, until the said vessel shall be safely arrived at November 10, 1838, at noon, with liberty of the globe, as aforesaid, and until she shall be moored twenty and four hours in good safety.  And it'shall and may be lawful for the said vessel, in her voyage aforesaid, to proceed, and sail to, touch and stay at, any ports or places, if thereunto obliged by stress of weather, or other unavoidable accident, without prejudice to this insurance.  The said vessel, the tackle, apparel, and other furniture, for so much as concerns the assured by agreement, made between the assured and assurers in this policy are, and shall be valued at eight thousand five hundred dollars, without any further account to be given by the assured to the assurers for the same."

The cause came on for trial before SERGEANT, J., at a Court of Nisi Prius, in Philadelphia, on the 17th of November, 1840, when the plaintiffs proved that the brig Delight sailed from Philadelphia in November, 1837, for South America, for the purpose of freighting, ·and took a cargo on board, entirely upon freight, at Rio Janeiro, in South America, and sailed on the 9th of October, 1838, for the island of Jersey, in the British channel, for orders : That on the 10th of November, 1838, she was at sea, on the voyage to Jersey, and while still at sea, on her said voyage, in December, 1838, encountered heavy gales and seas, which did great damage to the brig, and·compelled her to put into Falmouth (England) for repairs. She was there repaired, and sailed thence with her cargo to Altona, where she arrived in April, 1839 ; and after discharging her cargo from Rio Janeiro, took on board another cargo, entirely upon freight,

and on the 28th of June, 1839, sailed from Altona to New Orleans, where she arrived.

On the part of the defendants there was given in evidence the following order for insurance.

" Insurance, $8,500 on the brig Delight, Carmick master, valued at that sum, for, and during the term of twelve calendar months, commencing this day at noon, with liberty of the globe, and if at sea at the expiration of said twelve months, the risk to continue at the same rate of premium, until her arrival at her port of destination in the United States; to return a proportional rate of premium for time not used, and no loss. Average loss to be adjusted each passage.

Premium, 5 per cent. for twelve months.

            [Signed,]              Eyre & Massey.

    Philadelphia, Nov. 10th, 1837.

        To the Marine Insurance Company.

N. B. If the vessel is sold previous to the expiration of the said twelve months, a proportionate rate of premium to be returned."

The following correspondence was also given in evidence.

                 " Office of the Marine Insurance Company.

                        Philadelphia, 22d May, 1839.

Gentlemen,

In November last when we noticed in the public prints, that the brig Delight, Cormick master, was destined on a voyage from Rio Janeiro to a port in Europe, we intimated to you that in the event of said vessel being at sea on the 10th of November, 1838, not destined to a port in the United States, the risk insured by this company on said vessel per policy No. 11515, dated the 10th of November, 1837, would terminate on the said 10th of November, 1838.

By the protest made by Capt. Carmick, it appears that the brig Delight sailed from Rio de Janeiro on the 9th of October, 1838, bound to Jersey, a place in Europe; that on the 10th of November, 1838, the said vessel was at sea not destined to a port in the United States; of course the risk insured by this company on said vessel terminated on the said 10th of November, 1838, and we are not liable for any loss sustained by said vessel subsequent to the said November, 1838.

           With great respect,

                Your most obedient servant,

                [Signed,]        Jacob Sulger Jr., President."

Messrs. Eyre & Massey.

(Eyre *v.* Marine Insurance Co.)

"Philadelphia, 10th August, 1839.

Jacob Sulger, Jr., Esq.,
    President of the Marine Insurance Co. of Phila.
        Sir:

We do not think that your letter to us of the 23d of May last requires an answer. The policy of insurance of the 10th of November, 1837, No. 11515, on $8,500 on the brig Delight, valued at that sum, is insured by your company on time, until her arrival at her port of destination in the United States; and you must be aware that you are firmly bound to see her safe arrived to a port in the United States. We now inform you that the brig Delight sailed from Altona or Hamburg on or about the 28th of June last for New Orleans, where the policy on the brig insured by your company will terminate by the terms of the policy, on her safe arrival at that port. The papers relating to the loss and damage at sea, in the brig Delight, put into Falmouth in December last for repairs, were duly lodged in your office several months since.

Yours respectfully,
        [Signed,]    EYRE & MASSEY."

"Office of the Marine Insurance Company.
    Philadelphia, 12th August, 1839.

Messrs. Eyre & Massey,
    Gentlemen—

We have received your favour of the 10th inst., in relation to the insurance effected by this company on the brig Delight, per policy No. 11515, dated 10th November, 1837.

In reply we respectfully refer to our letter addressed to you on the 23d of May last, and repeat the declaration that the risk insured by the policy aforesaid, terminated on the 10th of November, 1838, and that any loss or damage the said vessel may have encountered or may encounter after the said 10th day of November, will not be paid by this company.

With great respect,
    Your most obedient servant,
        [Signed,]    JACOB SULGER, JR., President."

The learned judge charged the jury that the plaintiffs were entitled to recover, and that the loss was covered by the policy; the vessel being at the expiration of the year on a voyage to Europe, and not to her port of destination in the United States.

The jury found, accordingly, for the plaintiffs.

The case now came before the court upon a motion for a new trial.

Mr. *Scott* in support of the motion.

One year is the extent to which any insurers go; and that is a heavy risk; it might do as to sea risks; but there are many others in the policy subject to great uncertainty and change. One year is a very long period for what is called a time risk. The order of insurance is so framed as to cover a risk after the year if on her return to the United States; and the policy was so made. On the 10th of November, 1838, she was on her voyage from Rio de Janeiro, to the island of Jersey, and while on her voyage two-thirds or three fourths of her passage over, she sustains a loss. The company, before the loss occurred, apprised the plaintiff of the construction of the policy, and the plaintiff might have had it corrected or got a new policy. Until the 10th of .November, 1838, there was no *terminus a quo* or *ad quem*. But then her *terminus a quo* was the precise spot where she was at noon of that day; and from that spot she was to be insured until she arrived at her port of destination in the United States. There was the *terminus ad quem*. I say, then, if the vessel was not bound to a port in the United States, she was on a voyage not insured, going to Jersey for orders from her freighters, and those orders were for Altona. So that in sailing from Rio de Janeiro she did not even contemplate a voyage to the United States. The language amounts to a warranty that she shall, on the 10th of November, 1838, be on a voyage to the United States. *Barker* v. *Phœnix Insurance Co.* (8 *Johns.* 307,) "good American ship Rodman," is a warranty that the ship is American. *Woodbridge* v. *Boydell*, (*Doug.* 16,) if a vessel is sailing on a voyage not within the policy, the policy don't attach. The voyage the Delight sailed was to Jersey: the voyage insured is from a *terminus a quo* to the United States. *Way* v. *Modigliani*, (2 *Term Rep.* 30.) *Forbes* v. *Church*, (3 *Johns. Cas.* 159.) If ours is not the true construction it is a contract of insurance forever: and when is the premium for the time beyond the year to be paid? 10 *Wend.* 28. 3 *Serg. & Rawle*, 25.

Mr. *Meredith* contra.

This was what is called a freighting voyage; *i. e.* to go abroad and get a cargo from place to place as she could. It is very common to make such voyages and insurances; and companies understand they are to see the vessel back to the United States. She is insured from twelve months, &c., and till moored twenty-four hours in safety. This is the original term, and would have covered her until arrived and in port, without the clause inserted. This clause of the twenty-four hours is different in different insurances. On the other point, it is clear she had a port of destination in the United States, as she was an American vessel. The point is, whether on the 10th of November, 1838, she was bound to proceed to the United States, or could prosecute another voyage. The policy was en-

(Eyre v. Marine Insurance Co.)

tered into with their eyes open; it could have been got elsewhere. The time of paying the premium is provided for in the policy. As to the policy lasting forever, there is no reason why it should not. In *Cleveland* v. *Union Insurance Co.* (8 *Mass. Rep.* 308,) this difficulty was raised; but it was held that it meant sailing backwards and forwards. In *Putnam* v. *Ward*, (3 *Mass.* 481,) it was said that the owner must, at every port, put the vessel in a seaworthy condition. If she is compelled on the 10th of November, 1838, to return to the United States, she has not the liberty of the globe, as the policy gives her. It would limit her to a voyage to South America and back; for that took all her time. With liberty of the globe, shows that they could not fix the destination of the vessel, or the nature or direction of the voyages, but must depend on contingencies, picking up cargoes along the coast. It is clear from the policy that she was going to a remote port, and not a neighbouring one. The terms, "if at sea," have been construed very strictly against the insurers, and a construction made to extend the policy; being words not meritorious or beneficial to the insurers. 14 *Mass. Rep.* 31, held to embrace a vessel lying in port under capture. *Bowen* v. *Hope Insurance Co.* (20 *Pick.* 275.) S. P. As to port of destination or discharge, it means ultimate discharge. 8 *Mass.* 527. 1 *Con.* 194, 239, 333. 4 *Doug.* 38. 8 *Pick.* 14, which much resembles this case, and where the same arguments were used by the counsel. You would, by the defendants' construction, compel the plaintiffs to have their vessel on a voyage to the United States, at the expiration of the twelve months, which would take away the liberty of the globe. *Cogshall* v. *Am. Ins. Co,* (3 *Wend.* 283,) other goods allowed to be substituted. Less than 5 per cent. would insure a voyage to South America and back. 2 *Str.* 1243, twenty-four hours in good safety, construed in favour of the assured. 8 *Barn. & Cres.* 119. S. P. 11 *Johns.* 356, this clause omitted.

Mr. *Scott*, in reply.

We informed them of our construction before loss, so that they ought not to charge us with waiting till loss. Moored in twenty-four hours refers to the termination of the voyage insured, and the question still remains what that is. The warranty of sea-worthiness only applies to the commencement of the voyage insured. To be sure, she must repair if in port the damage incurred; but the insurers must show, if loss occurred, that it happened from neglect to do this.

The opinion of the court was delivered by

RogERS, J.—This was an action on a policy of insurance on the brig Delight, for and during twelve calendar months, commencing on the 10th of November, 1837, at noon, and ending at the 10th of November, 1838, at noon, with liberty of the globe;

and if at sea at the expiration of the said twelve months, the risk to continue at the same rate of premium until her arrival at her port of destination in the United States. The policy further states, " beginning the adventure when the said vessel &c., at and from, &c., for twelve months, from November 10, 1837, at noon, as aforesaid, and so shall continue and endure, until the said vessel shall be safely arrived at November 10, 1838, at noon, with liberty of the globe, as aforesaid, and until she be moored twenty-four hours in good safety." The insurance was effected under the following order.

" Insurance $8,500 on the brig Delight, Carmick master, valued at that sum, for and during the term of twelve calendar months, commencing this day at noon, with liberty of the globe ; and if at sea at the expiration of said twelve months, the risk to continue at the the same rate of premium until her arrival at her port of destination in the United States ; to return a proportional rate of premium for time not used, and no loss. Average loss to be adjusted each passage.

Premium, 5 per cent. for twelve months.

EYRE & MASSEY.

Philadelphia November 10, 1837.

N. B. If the vessel is sold previous to the expiration of said twelve months, a proportionate rate of premium to be returned."

The brig sailed from Philadelphia, in November, 1837, for South America, for the purpose of freighting, and took a cargo on board, entirely on freight, at Rio Janeiro, in South America ; and sailed, on the 9th of October, 1838, for the island of Jersey in the British Channel, for orders. On the 10th November, 1838, she was at sea, on a voyage to Jersey, and when at sea, on the said voyage, viz. in December, 1838, encountered heavy gales, which did great damage, and compelled her to put into Falmouth, (England) for repairs. She was there repaired, and sailed on her voyage for Altona, where she arrived in April, 1839 ; and after discharging her cargo from Rio Janeiro, took on board another cargo, entirely on freight ; and on the 29th of April, 1839, sailed from Altona for New Orleans, where she arrived.

The construction put upon the contract by the underwriters, (of which they, in due time, notified the assured,) is, that although the vessel was at sea on the 10th of November, 1838, yet, as she was not destined to a port in the United States, the risk terminated on that day. The assured, on the contrary, insist that the underwriters were bound for her safe arrival at a port in the United States. The difference in the construction is a very marked and wide one. If we adopt the latter construction, the policy is an insurance for an unlimited time,· which may endure, at the will and pleasure of the assured, during the life of the brig. As it terminates only on her arrival at a port in the United States, if the owners think proper to prevent her return, the risk must continue. That such an insurance may be made, unlimited in point of time, with liberty of the

globe, cannot be doubted, if such appears to be the intention of the parties. For this, the underwriters will increase the premium in proportion to the increase of the risk. But where such is the wish of the assured, it ought to be clearly expressed; at least the intention should not be left in doubt in the proposals, the words of which are not to be taken most favourably for themselves. It is, also, equally clear, that the parties may contract for a limited or specified time, with liberty of the globe, during that time. This appears to have been a trading or freighting voyage of the latter description. It was a trading voyage with liberty of the globe, during the time of one year, and no longer; if the contract had ended at the first clause, the meaning of the parties would not have been even doubtful. Within that period, the owners have liberty to go to any part of the world; and it was supposed to be a time sufficiently prolonged, to answer all their purposes. But the contract is supposed to be enlarged by the subsequent part of the policy. But it seems very clear, that this was inserted, because it was supposed the vessel might be at sea at that time, on her voyage home, and therefore an insurance might be necessary until she was safely moored in some port of the United States. No reason has been suggested, and none occurs to me, why any precise period was fixed, if the intention of the parties was, as the assured contends. It is not necessary to fix the rate of premium, nor the time when the premium was to be paid; nor have apt words been used to express such intention. Indeed, if such was the meaning of the assured, they have been most unfortunate in the language used in the contract. The plaintiffs' construction strikes time out of the agreement; but this, as is apparent from the whole contract, is an essential feature of it; and without which, the underwriters may have been unwilling to take the risk at all, or if taken, it would have enhanced the premium. It is very certain, as a general rule, that the older and more exposed the ship, the greater the risk; for although it is the duty of the owners to keep the vessel in good condition, yet the law implies no warranty of seaworthiness, except at the commencement of the voyage. For when a vessel which has received damage from a peril insured against, puts into port to repair, the captain or agent who superintends the repairs, is only bound to use due diligence. It is not necessary, at all events, that the vessel should be so repaired as to render her seaworthy. A vessel having liberty of the globe, may, and often does, touch at a port, or she is driven into a port, where the necessary repairs could not be made, and yet the underwriters would be liable. *Peters* v. *The Phœnix Insurance Company,* (3 *Serg. & Rawle,* 25.) Time was inserted in the agreement, to fix the period of the extraordinary risk incurred by the underwriters, in their insurance, with liberty to trade in any part or parts of the world, to be prolonged only if the vessel was at sea, on her return to her port of destination in the United States, at

the time specified. It has been asked, when the additional premium is to be paid; to which it has been answered, when the risk terminates, viz. when the owners think proper to order the return of the brig. This necessary consequence, from the latter construction, will be very injurious to the interests, and it may be inconvenient to the underwriters, and is an argument adverse to the pretensions of the assured.

There is another clause of the policy, which provides that the insurance shall continue and endure until the vessel shall be safely arrived at November 10, 1838, at noon, with liberty of the globe, and until she shall be moored twenty-four hours in good safety.

It is contended, that if the vessel was at sea on the 10th November, 1838, destined to any port whatever, the underwriters insure her until her arrival at that port, and until she shall be moored twenty-four hours in good safety. But this must be taken in connection with the preceding clause, and was intended as an extension of the insurance from that time, provided she was at sea, within the meaning of the policy, prosecuting her voyage to her port of final destination. No resemblance is perceived to the cases of *Wood* v. *The New England Insurance Company*, (14 *Mass. Rep.* 31,) or *Bowen* v. *The Hope Insurance Company*, (20 *Pick.* 275,) where the meaning of the words, 'at sea,' in a policy of insurance, was discussed. It was there held, under the circumstances stated, that a ship was at sea, within the fair construction of the contract, although not literally so, at the time of the loss. In the one case she was in a British port, whither she had been carried against the will of the master; and in the other, before the expiration of the year, she had been prevented from proceeding on her voyage from Bangor in Wales to Boston. In consequence of head winds she came to anchor, and was unable to get out of the straits, although she attempted to do so for several successive days, until after the expiration of the year. It was held, that she was at sea at the termination of the year, within the meaning of the policy. The question there decided, does not arise here. The term, at sea, may have different senses, according to the connection in which it is used. And in this case, we must look to the subject-matter of the contract, and to the intention of the parties, which was to provide for the contingency of the vessel being at sea, on the expiration of the year, on her return voyage: it was prudent to provide for a loss which might accrue at any time between that period and her being safely moored in some port in the United States. This stipulation made the owners absolute masters of all the movements of the brig, for and during the term of one year; exacting from them, however, that if it was prolonged, it was only on the condition she was at sea, on her voyage to the port of her final destination.

We determine this case in the words of the contract, without regard to conflicting assertions; for we know of no usage, which

can control its construction.   It is very probable, if the question was referred to underwriters and insured, each would give the contract the construction most favourable to themselves.

New trial awarded.