# Bolman *et al. v.* Overall, Ex'r, *et al.*

*Bill in Equity to establish Testamentary Paper as Contract, and enforce Trust on Property against Executor and Legatees under Will subsequently Executed and Probated.*

1. *Testamentary paper executed on valuable consideration.*—A paper in the form of a will, executed in consideration of personal services rendered or to be rendered, or other valuable consideration, and delivered to the devisee or legatee therein named, may constitute an irrevocable contract.

2. *Same.*—Such a contract is not repugnant to public policy, but may be enforced, after the death of the promisor or testator, by action for a breach against his personal representative, or, in a proper case, by bill in equity against his heirs, devisees, or personal representative.

3. *Same; how enforced in equity.*—Such testamentary paper, when founded on valuable consideration, is in the nature of a covenant to stand seized to the use of the promisee; and it will be enforced in equity under a bill in the nature of specific performance, by fastening a trust upon the property in the hands of an executor, legatees and devisees, under a subsequent inconsistent will.

4. *Parties to bill.*—All the persons named in such testamentary paper as legatees, their rights differing only in extent or quantity, may unite as plaintiffs in a bill to enforce it.

5. *Probate of subsequent will, as defense to bill.*—The probate of the subsequent will, by the court having exclusive jurisdiction, though binding on the parties claiming under the former testamentary paper, is no defense to a bill which seeks to establish and enforce a trust on the property in their favor.

6. *Contracts of married woman having separate estate.*—A married woman, having a separate estate (which is presumed to be statutory, in the absence of averment and proof to the contrary), can not bind it or herself by a testamentary paper as an irrevocable contract, though she has power to execute a will.

[Bolman et al. v. Overall, Ex'r, et al.]

7. *Earnings and services of wife during coverture.*—The earnings and personal services of the wife, during coverture, presumptively belong to the husband, though he may relinquish them in her favor, except as against his existing creditors ; and when the wife attempts to enforce in equity, after the death of the husband, a contract for her own benefit, the consideration of which was personal services rendered by her during coverture, she must allege and prove a relinquishment in her favor, and that the husband left no debts, or that his debts have been paid.

8. *Remedy at law.*—There is no adequate remedy at law, in favor of the persons named as legatees in such testamentary paper, on account of the failure of the promisor to carry out its provisions ; and the jurisdiction of equity is maintainable on the grounds of fraud, trust, and specific performance.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by Louisa Bolman and her married daughters, Caroline Kramer and Emma Pfieffer, against Gibson Y. Overall, as the executor of Augusta Lohman, deceased, November 6th, 1886.

The averments of the bill sufficiently appear in the opinion of the court. A demurrer was interposed by the defendants, setting out a great number of grounds, among which were those numbered 5 and 15, which are in the following words, viz : "5. The bill shows that Louisa Bolman was a married woman at the time the services were rendered, and that since said time her husband, John Bolman, had died, hence it shows that whatever claims she had against Mrs. Augusta Lohman for services so rendered during coverture belong to the estate of John Bolman, her husband, and not to complainant Louisa Bolman or her daughters." "15. That the bill shows that Mrs. Lohman was a married woman at the time she made the contracts and agreements alleged in the bill, and that she still remained a married woman to the day of her death ; hence said bill shows that Mrs. Lohman was not *sui juris*, and could not make a contract binding, or which can be enforced by law or in equity." The cause was submitted for decree upon demurrer, and on motion to dismiss for the want of equity. The chancellor decreed that there was no equity in complainants' bill, and sustained the demurrer, from which decree complainants appeal.

F. G. BROMBERG, for appellants.—The agreement of Mrs. Lohman to make a will in favor of the appellants was a valid and binding contract between the parties—citing : *Johnson v. Hubbell,* 10 N. J. Eq. 332 : *Van Dayne v. Vresland,* 1 Beas. 147 ; *Davison v. Davison,* 13 N. J. Eq. 246 ; *Smith v. Smith,* 4 Dutch, 216 ; 5 Pick, 380 ; 95 N. Y. 575 ; 42 N. Y. 382 ;

[Bolman et al. v. Overall, Ex'r, et al.]

3 Pars. Con. 406; 7 Barr, 53; *Taylor v. Kelly*, 31 Ala. 59; *Eyre v. Potter*, 15 How. 60; 66 Ala. 161.

OVERALL & BESTOR, *contra*.—Mrs. Lohman had the power to dispose of her property by will.—Code of Alabama, § 2713. She made at different times three different wills. The last will she made on the 16th day of April, 1883. "Exhibit C" to the bill, and this will was probated on the 5th day of November, 1886. This last will revoked the wills previously made.—Code, § 2297. Even the cancellation of a subsequent will, will not revive one previously made.—Code, § 2298. Wills are proved in the Probate Court.—Code, § 2304. The law provides the manner of their contestation in the Probate Court.—Code, §§ 2317, 2336. The jurisdiction of the Probate Court is full, complete and its action conclusive.—*Ikelheimer v. Chapman's Adm'r*, 32 Ala. 676, 681; *Gray's Adm'r. v. Cruise*, 39 Ala. 559; *Callart v. Allen*, 40 Ala. 155. Mrs. Bolman was, at the time the services were rendered, a married woman. If there was any claim for services rendered by the wife and children, it would belong to Mr. Bolman, or to his executor or administrator after his death.—*Evans, Fite, Porter & Co. v. Covington*, 70 Ala. 440; *Shaffer v. Sheppard*, 54 Alabama, 244; *Carleton v. Rivers*, 54 Ala. 467; *Gordon & Rankin v. Tweedy*, 71 Ala. 204.

On the hearing of the cause in the lower court, appellants' counsel mainly relied upon the question of specific performance of the contract claimed to have been made verbally and by the two prior wills. This is not such a contract as can be enforced under the principle of specific performance.—3 Parsons on Contracts, p. 406; *Stafford v. Bartholomew*, 2 Carter, Ind. 153. "The performance must be necessary. There must be a *valuable* consideration."—Pomeroy on Contracts, note to § 36, p. 53.

"It is the fundamental principle that equity will not decree the specific execution of a contract unless the undertaking is founded on a *valuable* consideration moving from the party on whose behalf the performance is sought."—Pomeroy on Contracts, § 57; *Irwin v. Bailey*, 72 Ala. 467; *Comer v. Bankhead*, 70 Ala. 493; *Moon v. Crowder*, 72 Ala. 80. But the allegations of the bill are not sufficient to establish such a lien or trust in lands.—*Carlisle v. Carlisle*, 77 Ala. 339; *Bailey v. Irwin*, 72 Ala. 505. Partial performance of an entire contract will not be decreed. Even if good as to the personal property, it can not be enforced as to the real estate, and hence not at all.—*Carlisle v. Carlisle*, 77 Ala. 339.

SOMERVILLE, J.—The appeal is from a decree of the

chancellor sustaining a demurrer to the bill of complaint filed by the appellants for specific performance. The complainants are the legates under the will of one Augusta Lohman, which instrument purported to be executed in consideration of valuable services rendered to her in her lifetime by the complainants, and was executed on December first, 1881, and delivered to Mrs. Louisa Bolman, who was made executrix of the will, and residuary legatee therein, and is one of the complainants. In April 1883, the testator executed another will in which she sought to revoke the previous one, with all of the legacies made under its provisions, and leaving her entire property to other beneficiaries. This will was duly probated, the defendant Overall being the executor therein, and the other defendants legatees.

The bill, in the first place, alleges a verbal agreement made in March, 1876, between the complainant, Mrs. Bolman, and the deceased testator then living, by which it was agreed that the latter would leave to the complainants (Mrs. Bolman and her two daughters) all the property owned by her at her death, if they would come, and nurse her and take care of her, she being then sick in bed and in a helpless condition. The bill avers a faithful performance of the duties assumed by the complainants for over seven years—that from March 1876 to February, 1883, they either went to the testator's residence, or else had her in their own, and nursed her in sickness, cooked and washed for her, and attended to all her wants, until she declined further to receive their attentions, and left their home against their expressed dissent, several years before her death, which did not occur until October, 1886.

1. No doubt can be entertained as to the nature of the paper, executed by Mrs. Lohman on December first, 1881, and delivered by her to Mrs. Bolman, and purporting to be the testator's last will and testament. It is clearly a will in form, being testamentary in frame and verbiage. But it is also a contract, in essence and fact, being executed, as stated on the face of the paper, "in consideration of past and future treatment," and, as shown by the bill, in furtherance of a previous parol agreement that it should be executed upon an admitted and specified valuable consideration. Cases are frequent in which instruments have been construed to be partly testamentary and partly contractual. And when based on a valuable consideration, a paper, in form a will, may, especially when delivered to a party interested, or to another for him, constitute legally and in fact an irrevocable contract.—*Taylor v. Kelly*, 31 Ala. 59; *Kinnebrew v. Kinnebrew*, 55 Ala. 628; Schouler on Wills, §§ 452–455.

The purpose of the bill, as we construe it, is not to enforce

[Bolman et al. v. Overall, Ex'r, et al.]

the parol agreement, in which the deceased agreed to bequeath
to complainants' all the property she might own at the time of
her death, but rather to enforce the modified agreement as evi-
denced by the written instrument, purporting to be a will.
No question can properly arise, therefore, as to the influence
of the statute of frauds, in view of the fact that real estate is
involved in the transaction. There are many well considered
cases, however, in which parol agreements of this character,
executed on the side of the promisee, have been enforced even
in relation to land. But on these we have now no occasion to
comment at any length.—*Rhodes v. Rhodes*, 3 Sandf. Ch.
(N. Y.) 279; *Shakespeare v. Markham*, 10 Hun. (N. Y.) 311.

2. There is nothing in this contract which is repugnant to
public policy. All the authorities agree that one may, for a
valuable consideration, renounce the absolute power to dispose
of his estate at pleasure, and bind himself by contract to dis-
pose of his property by will to a particular person, and that
such contract may be enforced in the courts after his decease,
either by an action for its breach against the personal repre-
sentative, or, in a proper case, by bill in the nature of specific
performance against his heirs, devisees, or personal representa-
tive.[ The validity of such agreements, as remarked by Mr.
Freeman, in a recent note on this subject to the case of *Johnson
v. Hubbell*, 10 N. J. Eq. Rep. (2 Stock.) 332; s. c., 66 Amer.
Dec. 773, 784, "is supported by an unbroken current of au-
thorities, both English and American."— *Wright v. Tinsley*,
30 Mo. 389; *Parsell v. Stryker*, 41 N. Y. 480. This principle
does not embrace cases where services are rendered, or other
valuable consideration parted with, in mere expectation of a
legacy, and in reliance only on the testator's generosity. But
there must be a contract, express or implied, stipulating for an
agreed compensation by way of legacy or devise.—*Martin
v. Wright*, 15 Wend. 460.

3. The principle upon which courts of equity undertake to
enforce the execution of such agreements is referable to its
jurisdiction over the subject of specific performance. It is not
claimed, of course, that any court has the power to compel a
person to execute a last will and testament carrying out his
agreement to bequeath a legacy, for this can be done only in
the lifetime of the testator, and no breach of the agreement
can be assumed so long as he lives. And after his death, he is
no longer capable of doing the thing agreed by him to be
done. But the theory on which the courts proceed is to con-
strue such an agreement, unless void under the statute of
frauds or for other reason, to bind the property of the testa-
tor or intestate so far as to fasten a *trust* on it in favor of the
promisee, and to enfore such trust against the heirs and per-

sonal representatives of the deceased, or others holding under them charged with notice of the trust. | It is in the nature of a covenant to stand seized to the use of the promisee, as if the promisor had agreed to retain a life estate in the property, with remainder to the promisee in the event the promisor owns it at the time of his death, but with full power on the part of the promisor to make any *bona fide* disposition of it during his life to another, otherwise than by will. The power to make such a will having been renounced, the attempt to exercise it is deemed a fraud on the rights of the promisee under the contract, thus bringing into exercise another ground of equity jurisdiction. As said by Lord Camden in *Dufoor v. Perran*, (quoted by Hargrave in his Judicial Arguments, Vol. 2, p. 310), there is no difference between one's promising to make a will in such a form, and making such will with a promise not to revoke it. The courts do not set aside the will in such cases, but the executor, heir, or devisee is made a trustee to perform the contract.— *Wright v. Tinsbey*, 30 Mo. 389; *Lord Walpole v. Lord Orford*, 3 Ves. 402; *Rivers v. Rivers* (4 Desaus 190), s. c. 4 Amer. Dec. 609; *Randall v. Willis*, 5 Ves. Jr. 262; *Johnson v. Hubbell*, 66 Amer. Dec. 773, 787; *note* and cases cited; 1 Story's Eq. Jur. (12th Ed.) §§ 785–786; *Taylor v. Mitchell*, 87 Penn. St. 518; *Logan v. McGinnis*, 12 Penn. St. 27; Waterman on Spec. Per. § 41; *Green v. Broyles*, (3 Humph. 167), s. c., 39 Amer. Dec. 156; *Schumaker v. Schmidt*, 44 Ala. 454. Mr. Schouler in his recent Treatise on Wills, § 454, lays down the rule, as deduced from the authorities, to be, that "where one contracts upon valuable consideration, to execute a will after a certain tenor, the agreement is binding upon his death, and may be specifically enforced against his personal representatives and his estate." Mr. Parsons, after recognizing the validity and binding force of such agreements, and their incapability of literal specific performance, observes, in his work on contracts, that it has, nevertheless, "been held to be within the jurisdiction of equity to do what is equivalent to a specific performance of such an agreement, by requiring those upon whom the legal title has descended to convey the property in accordance with its terms." "And," he adds, "the court will not allow this *post mortem* remedy to be defeated by any devise, or conveyance in the lifetime inconsistent with the agreement."—3 Parson's Contr. (7th Ed.) §§ 406–407. In Waterman on Specific Performance, § 41, it is said generally: "A person may make a valid agreement binding himself to dispose of his property in a particular way by last will and testament, and a court of equity will enforce such an agreement by compelling the heir at law to convey the property in accordance with the terms of the contract; but such a contract,

[Bolman et al. v. Overall, Ex'r, et al.]

especially when it is attempted to be established by parol, is regarded with suspicion, and not sustained except upon the strongest evidence that it was founded upon a valuable consideration, and deliberately entered into by the decedent."

Under all of the best considered authorities, we are of opinion, that the contract, evidenced by the will, is one which is capable of being enforced against the executor and legatees under Mrs. Lohman's last will, they being declared to be trustees of the executor's property for complainant's benefit, unless some good reason is shown to the contrary, other than any appearing in the statements of the bill.

4. The complainants are all legatees in the will and can clearly unite in the enforcement of their rights, which do not differ in nature or kind, but only in extent or quantity.

5. The fact that the last will of Mrs. Lohman has been probated by a court having exclusive jurisdiction of the probate of wills, and that this action of such court is conclusive on the complainants, and all others, is no answer to the purpose and prayer of the bill. No effort is made to disturb or set aside such probate, but to fasten a trust on the property, in the hands of the executor and legatees, who are admitted to hold the legal title to such property by virtue of the will, and its probate by the proper court.

6. One of the objections taken by demurrer to the bill is that Mrs. Lohman was a married woman at the time she made the alleged contract, and that for this reason it was not binding on her. This depends on the character of the separate estate held by her. If this was equitable, then she could bind it as if she were a *femme sole*, so that a trust could be fastened on, and made to follow it in the hands of the defendants, who are mere volunteers, and not purchasers for value. If, however, her estate be statutory, which must be assumed unless the contrary be alleged in the bill, Mrs. Lohman, being under coverture, labored under a disability to bind it by contract, or create a trust in it, in the manner attempted. It is true, that, under our statute married women may dispose of their separate estates by last will and testament. But this power can be exercised only in the manner specified, and can not be construed to confer the authority to make a contract fastening a trust on such estate—one which is tantamount in legal effect to a covenant to stand seized to the use of another. The incapacity of the wife to contract at common law would operate to render such a contract, which is executory in nature, void and of no effect. *Blythe v. Dargin*, 68 Ala. 370; *Waddell v. Weaver*, 42 Ala. 293; *Jenkins v. Harrison*, 66 Ala. 345.

The averments of the bill not being sufficiently certain to

[Bolman et al. v. Overall, Ex'r, et al.]

show that the estate of Mrs. Lohman was equitable, the *fifteenth* ground of demurrer to the bill was properly sustained.

7. So there was, in our judgment, no error in sustaining the *fifth* ground, which seems to have been well taken.    Mrs. Bolman, one of the complainants, appears from the bill also to have been a married woman.    The consideration paid by her for the legacy agreed to be left her was her personal servic es. Her services and earnings, presumptively, belonged to her husband.    He being dead, the action would seem, therefore, to properly lie in the name of his personal representative and not in that of the wife.    Upon the facts stated in the bill the executor would have no defense to another suit instituted by any creditor of the deceased husband who might hereafter obtain letters of administration on his estate.    The husband, it is true, may relinquish such earnings to the wife, and such release would be valid except as to existing creditors; or, if fraudulently made, it might be subject to assailment also by his subsequent creditors.    To make a good case for complainants the bill should have averred that the husband's estate had no creditors, or else that such debts were paid, and have also alleged facts showing a relinquishment by the husband, express or implied, of the wife's earnings to her.—*Pinkston v. McLemore*, 31 Ala. 398 ; *Roswald v. Wing*, 74 Ala. 346.

8. It is manifest that the complainants' remedy at law was not complete and adequate.    It may be that they might have maintained an action against the executor for the value of the personal services rendered, or perhaps of the property agreed to be devised, as a claim against the estate of Mrs. Lohman, had she been *sui juris* when she made the contract.    But being a married woman she could not bind herself personally, as we have before said, but could only bind her separate estate, provided it was equitable.    Moreover, specific performance is peculiarly a branch of equity jurisdiction, especially in cases of this particular nature involving the matter of trust, and the prevention of fraud.    "A court of equity will decree the specific performance of such an agreement, upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction."—*Parsell v. Stryker*, 41 N. Y. 48, 487; *Johnson v. Hubbell*, 10 N. J. Eq. Rep. 332, (s. c. 66 Amer. Rep. 773), *supra*.

The decree of the chancellor sustaining the demurrer to the bill is affirmed.