(100 South. 834)

## TAYLOR v. CATHEY. (4 Div. 87.)

(Supreme Court of Alabama. May 29, 1924. Rehearing Denied June 30, 1924.)

1. **Frauds, statute of ⬅118(3)—Contract expressed by letters held taken out of statute.**

Where a contract to pay for care for the remainder of a person's life, and to bequeath property, was contained in letters, and which expressed the consideration and was signed by the person to be charged, the agreement was taken out from under Code 1907, § 4289.

2. **Wills ⬅58(1)—Agreement to bequeath in consideration of care during life not contrary to public policy.**

A contract to bequeath property in consideration of care during life is not contrary to public policy.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Wills ☞63 — Letters containing contract must be construed together.**

Where a contract by aged person to pay for care for the remainder of her life and to bequeath property was evidenced by several letters, the letters must be construed together.

**4. Wills ☞68—Action maintainable on contract to bequeath in consideration of care.**

Action may be maintained against the personal representative of a decedent for breach of contract to bequeath in consideration of care during promisor's life, where plaintiff partly performed and was prevented by promisor from fully performing.

**5. Wills ☞68—General affirmative charge for defendant improper if under certain aspects of evidence plaintiff could recover.**

In an action for breach of a contract by an aged person to pay for care for the remainder of her life and to bequeath property, there being evidence tending to prove plaintiff's averments, it was error to give for defendant a general affirmative charge, which should never be given when, under certain aspects of the evidence, if believed by the jury, plaintiff could recover.

Appeal from Circuit Court, Bullock County; J. S. Williams, Judge.

Action for damages for breach of a contract by Lucy C. Taylor against Jennie Cathey, as executrix of the will of C. M. Coleman, deceased. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

L. M. Moseley, of Union Springs, for appellant.

The several letters constituted a binding contract; they are to be construed together. Kyle v. Jordan, 196 Ala. 509, 71 South. 417; Strouse v. Elting, 110 Ala. 132. 20 South. 123; White v. Breen. 106 Ala. 159, 19 South. 59, 32 L. R. A. 127; Jenkins v. Harrison, 66 Ala. 345. The testatrix was competent to renounce her power to dispose of her estate by will. Bolman v. Overall, 80 Ala. 451, 2 South. 624, 60 Am. Rep. 107; Manning v. Pippen, 86 Ala. 357, 5 South. 572, 11 Am. St. Rep. 46; 40 Cyc. 1063.

Blue & Blue, of Union Springs, for appellee.

Personal services rendered in expectation of a legacy is not sufficient, but there must be a binding contract to devise by the testator. Bolman v. Overall, 80 Ala. 455, 2 South. 624, 60 Am. Rep. 107; Johnson v. Hubbell, 10 N. J. Eq. 332, 66 Am. Dec. 773. Such a contract must possess the essentials to take it without the statute of frauds. 40 Cyc. 1063. The contract depended upon whether plaintiff met the requirements of the testatrix. Wilmer v. Borer, 4 Kan. App. 109, 46 Pac. 181; Rose v. Oliver, 32 Or. 447, 52 Pac. 176; Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332; Drake v. Lanning, 49 N. J Eq. 452, 24 Atl. 378; Brown v. Garten, 89 Iowa, 373, 56 N. W. 536; Davis v Hendricks, 99 Mo. 478, 12 S. W 887, Van Horn v. Demarest, 76 N. J. Eq. 386, 77 Atl. 354; 54 N J. Eq. 581. 35 Atl. 750; Mitchell v. Pirie, 38 Wash. 691, 80 Pac. 774. Payments and gifts during lifetime are prima facie proof of payment for the value of services rendered. Alexander on Wills, 168. No recovery can be had on an implied promise. Price v. Price's Ex'r, 101 Ky. 28, 39 S. W. 429.

MILLER, J. This is a suit for damages by Lucy C. Taylor against Jennie Cathey, as executrix of the estate of C. M. Coleman, deceased, for breach of a written contract entered into by plaintiff with C. M. Coleman, the testatrix.

There were three counts in the complaint. The defendant pleaded general issue. The jury returned a verdict in favor of the defendant, and from a judgment thereon by the court, the plaintiff prosecutes this appeal.

The agreement between plaintiff and C. M. Coleman, the testatrix, alleged to have been breached, is thus stated in count 1:

"A certain written contract or agreement made and entered into by the said C. M. Coleman in her lifetime with the plaintiff, for that, to wit: that heretofore, to wit, during the year 1915, the said C. M. Coleman, who was a woman of mature years, and who resided in the city of Union Springs, Bullock County, Ala., by certain letters written by the said C. M. Coleman, and mailed to and received by the plaintiff, and which letters bear dates, to wit, February 19, 1915, and, to wit, February 6, 1915, and, to wit, March 1, 1915, respectively, entered into a contract or agreement in writing with the plaintiff that, for and in consideration of the plaintiff's removing from and leaving the home of the plaintiff in the state of Texas, and making her residence with the said C. M. Coleman at the home of the said C. M. Coleman, in Union Springs, Ala., during the remainder of the lifetime of the said C. M. Coleman, for the purpose of rendering her services and attention to the said C. M. Coleman, as an attendant or friend of the said C. M. Coleman, during her last days, that plaintiff would receive and become the owner of all the property, both real and personal, of which the said C. M. Coleman was then seized and possessed."

Count 2 alleges the agreement in practically the same words as the above, except it concludes:

"All the real and personal property of which the said C. M. Coleman was then possessed, would at the death of said C. M. Coleman go to and become the property of the plaintiff."

The agreement alleged in count 4 is the same as in count 1, except it concludes as follows:

"Said C. M. Coleman would at the death of said C. M. Coleman will and devise to the plain-

tiff all of the real and personal property of the said C. M. Coleman."

Each count avers the testatrix was an aged woman about 85 years old, and unmarried—a second cousin of plaintiff. The plaintiff came from Texas to the testatrix, lived with and cared for her as the contract re-quired for 4½ years, when she was discharged without good excuse; and it is shown that she was always ready, willing, and able to carry out her part of the contract. Miss Coleman died on April 26, 1920, leaving a last will and testament, but she made no provision by gift, deed, or will whereby plaintiff received any of the real or personal property owned and possessed by her as she agreed.

There was evidence tending to show that plaintiff lived in the house with Miss Coleman, nursed, cared for, and attended to her for 4½ years, when she was discharged on account of the expense. There was evidence that she was willing, able, and ready to look after her during the balance of her life. Miss Coleman died, left a last will and testament, disposed of all of her property by the will, and made no provision by gift or deed of any of it to plaintiff, and bequeathed her no part of it by the will. The value of her real and personal property at her death was $9,485. The defendant introduced no evidence. The court, at the request of the defendant, gave the jury the general affirmative charge with hypothesis in her favor, which charge was in writing. This is the error assigned by the plaintiff, the appellant. The only question presented by the record is whether there was any evidence tending to prove the agreement alleged to have been breached in the different counts. There was evidence proving or tending to prove all of the other averments in each count.

Each count avers the breach of a written contract or agreement made and entered into by C. M. Coleman and plaintiff, and that it was evidenced by letters written and signed by C. M. Coleman, which letters were addressed to plaintiff, and the propositions in the letters were accepted by plaintiff. These letters are in evidence, and are signed by her. Do they prove or tend to prove the written contract or agreement alleged in any count in the complaint? The plaintiff lived in Texas and the testatrix in Alabama. There are several letters in evidence written by Miss Coleman in Alabama and mailed to and received by the plaintiff in Texas. They are all lengthy letters, touching on many matters, but we will refer only to the parts which make reference to the proposed agreement.

Miss Coleman on January 27, 1915, wrote to Miss Annie Chapman, sister of plaintiff, that she wished her to live with her; but it appears she could not. In this letter she refers to the plaintiff, as follows:

"The only thing about Lucy is I fear she would not be satisfied about her children, being away from them and her home, and then I would not be able to pay her a salary sufficient to keep them up; but whoever does come I want to pay a reasonable amount, and at my death to have all I have got to be fixed so that that one will get it. If I can keep what I've got I can settle three or four thousand dollars and a nice cottage of five rooms and all my personal household effects on the one that is good to me. I have a $1,000.00 interest in the 1st National Bank here, also that I want to go that way. Of course I had rather give my possessions to some one of kindred ties and I know full well that if my dear father could speak he would say give it to some of my descendants."

Miss Coleman also stated in this letter:

"As soon as I can arrange for some one to be with me, I want to make my will and fix my affairs so that at my death there will be no trouble about my property and all my effects going to the one who takes care of me. If it is you or Lucy or any other, I want what I leave to be theirs. The one who stays with me and takes care of me. I have not written to Lucy. I thought you had better write to her first and see what she says, so if you have not done so, please write to her right away and let me know the result."

Miss Coleman on February 6, 1915, wrote plaintiff a letter, in which she states, among other things:

"Your much appreciated letter was received promptly and I would have answered at once but wanted to hear from Annie before writing. Her letter came last night and so I'll write you to-day. It is mighty good in you to be willing to come to me in my distress. I surely need a friend to stand by me and I often think that I have none, that I am alone in the world, with not one that cares for me in the least, but I am not going to worry you with my complaints. * * * At present, my nephew, Lee Alexander, is here but when the time comes he will have to go somewhere else. Aside from my needs there will be little or nothing for my attendant to do and while I live I want to be just as little trouble as possible to anybody. I don't know what salary I can offer, but I want it sufficient to be just and fair. Have you an idea about what it should be, or what you want? If I could have kept what I had, I would have had a good income but people have and still have, an idea that I am rich and every one pulls me for all they can. I want some one with me that will be good to me and will stay with me until I die, then I want everything I possess to go to that one."

Miss Coleman on February 19th wrote plaintiff a letter containing the following:

"Would you be willing to stay with me for $25 per month and board of course. I trust that I will not be much trouble and if the good Lord will let me continue to keep my faculties, that I will never be cross nor disagreeable. I have an interest in the First National Bank of $1,000 at the start, now it is more and pays dividends of from $100 to $125 per annum. Then I have a small cottage worth $2,000 or $3,000 or $4,000 in cash, also my personal ef-

fects here in the house. All of this I want to go to the one who stands by me in my afflictions and is good to me. Aside from my niece, Mrs. Jennie Cathey, I have no kindred ties closer than yourself. Jennie has her children and is comfortable in her own home—so I cannot look to her. According to the natural laws of nature my years are but few at best, and no one will ever be troubled with me long, but during that time it would be great consolation to feel that I had one true earthly friend to be with me and to put me away at the end; without the desecration of stranger hands."

In this letter she also refers to a warehouse, in which she owns only a life interest. She then states:

"My father gave me this home, but I wanted Addie to have it, so willed it to her. She is gone but her children will get it and I see now will sell it as soon as I am gone. The other property I first wrote you about is mine, with no one to interfere."

Miss Coleman on March 1, 1915, wrote plaintiff as follows:

"As to the salary of $30 per month—that will be all right. * * * Arrange your affairs to suit yourself but try to have it so you can come at any time. I hope and pray that you will not have cause to regret the step and that it may be in my power to add much to your comfort, pleasure and means."

In May, 1915, Miss Coleman wrote plaintiff another letter, mailed her a check for $30 to pay her expenses from Texas to Alabama. The plaintiff came to her, remained with her, and cared for her for 4½ years. During a part of the time she paid plaintiff $30 and afterwards $40 per month.

The will of testatrix introduced in evidence, and which was duly probated, was executed on June 11, 1914, before these letters were written to plaintiff.

[1-3] These letters signed by Miss Coleman take the agreement from under the statute of frauds. Section 4289, Code 1907. It is in writing, evidenced by letters, signed by Miss Coleman, the person to be charged therewith, who was unmarried. The letters express the consideration, which was to board the plaintiff, pay her $30 per month, and, if she "cared for, stayed with her, and was good to her" during the remainder of her life, then she would by will bequeath to her "all of my effects." She owned and died seized and possessed of real and personal property. She wrote plaintiff:

"I want some one with me that will be good to me, and will stay with me until I die, then I want everything I possess to go to that one."

In the letter of January 27th she states:

"Whoever does come I want to pay a reasonable amount and at my death to have all I have got to be fixed so that that one will get it."

She clearly proposed and agreed by these letters with plaintiff to give her board, $30 per month, and, if she was "good to her," stayed with her and cared for her until she died, then she would give her or bequeath to her all the property she possessed. In the letter of February 19th she named the property that she intended to bequeath to the "one who stands by me in my afflictions and is good to me," clearly intending plaintiff, if she complied with the terms and conditions of the agreement.

This contract is not void under the statute of frauds (section 4289, Code 1907), nor is it contrary to public policy. The letters must be considered and construed together. The testatrix bound herself by the letters to give or bequeath all property she possessed at her death to plaintiff on condition she "stayed with her, cared for her, and was good to her" until she died, and she further agreed and bound herself to pay her $30 per month and give her board during the time. This court has held parties can make such a contract; it is a valid agreement binding the parties, "unless assailed on some other sufficient ground."

In Bolman et al. v. Overall, Ex'r, 80 Ala. 451, 2 South. 624, 60 Am. Rep. 107, this court wrote:

"All the authorities agree that one may, for a valuable consideration, renounce the absolute power to dispose of his estate at pleasure, and bind himself by contract to dispose of his property by will to a particular person, and that such contract may be enforced in the courts after his decease, either by an action for its breach against the personal representative, or, in a proper case, by bill in the nature of specific performance against his heirs, devisees, or personal representative. The validity of such agreements, as remarked by Mr. Freeman, in a recent note on this subject to the case of Johnson v. Hubbell, 10 N. J. Eq. [2 Stock.] 332; s. c., 66 Am. Dec. 773, 784, 'is supported by an unbroken current of authorities, both English and American.' Wright v. Tinsley, 30 Mo. 389; Parsell v. Stryker, 41 N. Y. 480. This principle does not embrace cases where services are rendered, or other valuable consideration parted with, in mere expectation of a legacy, and in reliance only on the testator's generosity. But there must be a contract, express or implied, stipulating for an agreed compensation by way of legacy or devise. Martin v. Wright's Adm'rs, 13 Wend. 460, 28 Am. Dec. 468."

The same principle is again stated in Manning v. Pippen, 86 Ala. 362, 5 South. 573, 11 Am. St. Rep. 46, as follows:

"Treating the case, then, as if Mrs. Manning's alleged promise to make a will was in writing subscribed by her, the question arises, under what conditions, and to what extent, is such promise binding? Pretermitting for the present her disability on account of coverture, the authorities are overwhelming, and rest on the soundest basis, that such a promise, supported by a valuable consideration, is valid and

binding, unless assailed on some other sufficient ground. Bolman v. Overall, 80 Ala. 451; 2 Stockt. Ch. (N. J.) 332; s. c., 66 Am. Dec. 773, and note containing citation of authorities, p. 784; Caviness v. Rushton, 101 Ind. 500; s. c., 51 Am. Rep. 759."

This principle was approved in Walker v. Yarbrough, 200 Ala. 458, headnote 1, 76 South. 390, and in Mayfield v. Cook, 201 Ala. 187, 77 South. 713.

[4] This contract was never fully executed by either party. It was as to each an executory contract. Under the averments of the counts in the complaint and under the evidence or its reasonable tendencies from facts proven, the plaintiff was prevented by Miss Coleman, without good excuse, from fully performing her part of the contract, and Miss Coleman did not fully perform her part thereof. An action under the circumstances of this case for the breach of the contract may be maintained in court by plaintiff against the personal representative of Miss Coleman. Authorities supra. See, also, Poe v. Kemp, 206 Ala. 228, 89 South. 716; Mooney v. Mooney, 208 Ala. 287, 94 South. 131.

[5] There was evidence tending to prove the averments of each count in the complaint and the court erred in giving that written charge requested by the defendant. The general affirmative charge in favor of the defendant should never be given by the court when, under certain aspects of the evidence, if believed by the jury, the plaintiff would be entitled to recover. McMillan v. Aiken, 205 Ala. 35, headnotes 9–11, 88 South. 135.

For the error mentioned, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

All the Justices concur.