34 So.2d 122

## MERCHANTS NAT. BANK OF MOBILE v. COTNAM.

### I Div. 301.

Supreme Court of Alabama.

Jan. 22, 1948.

Rehearing Denied March 11, 1948.

Caffey, Gallalee & Caffey; of Mobile, for
appellant.

Johnston, McCall & Johnston and Am-
brecht, Inge, Twitty & Jackson, all of
Mobile, for appellee.

FOSTER, Justice.

This proceeding is for the purpose of testing the validity of a claim which was filed by Mrs Ethel W. Cotnam against the estate of Thomas S. Hunter, deceased, in the Mobile Probate Court. The claim was filed within the statutory period of six months. Section 211, Title 61, Code.

The beginning of this contest was a petition and notice filed by the administrator of the estate of Thomas S. Hunter, the Merchants National Bank of Mobile, making application to the probate court "to hear and pass on the validity of the claim filed by Ethel W. Cotnam against said estate on, to-wit, July 27, 1945, which claim the administrator disputes in whole." It is as follows:

"Estate of T. Shannon Hunter, deceased,
 In account with Ethel W. Cotnam
 Amount owing and due to
 Ethel W. Cotnam under
 an agreement between T.
 Shannon Hunter and Ethel W. Cotnam, by which
 she was to receive and be
 paid a sum equal to one-
 fifth (1/5) of the value of
 his estate, which agreement has been fully per-
 formed on her part, and
 for services rendered.... $175,000.00.

State of Alabama⎫
County of Mobile⎭

Before me, the undersigned authority in and for said County and State, personally appeared Ethel W. Cotnam, who being by me duly sworn, on oath deposes and says, that the foregoing claim or statement is correct as therein set forth, and that the amount therein stated is justly due her by the estate of T. Shannon Hunter, deceased, after allowing all proper credits.

   (Signed) Ethel W. Cotnam.
Sworn and subscribed to before me this 27th day of July, 1945.
(Notarial Seal) (Signed) Thelma Power
 (Affixed)   Notary Public, Mobile
      County, Alabama.
Filed July 27th, 1945."

The authority for such a contest in section 216, Title 61, Code, as amended by Acts of 1943, page 380, approved July 1, 1943.

The probate judge heard such petition, without further pleading on the part of the administrator or the claimant, and on November 8, 1945, rendered a decree finding "that the proof is insufficient to show that there was any contract between Ethel W. Cotnam and Thomas Shannon Hunter, deceased, or that the said Ethel W. Cotnam ever performed any services for the said deceased, or that said decedent or his estate is indebted to Ethel U. Cotnam in any amount whatsoever." The court therefore ordered, adjudged and decreed that the claim "is invalid, and that neither the decedent nor his estate is in anywise indebted to the said Ethel W. Cotnam." No issue was made as to a compliance with sections 211 and 214, Title 61, Code.

An appeal was taken to the circuit court, as authorized by the law cited above, in which it is provided that "the trial of the validity of said claim in said circuit court shall be de novo and upon demand, of either party, filed in the circuit court within thirty days from the taking of said appeal shall be tried by a jury."

Thereupon the administrator, styling himself as the defendant, made a motion to require the claimant to file a complaint stating any cause of action which she might have on said claim. The court made such order, and thereupon the claimant, styling herself as the plaintiff, filed a complaint without alleging whether or not the claim sued upon has been filed as required by sections 211 and 214, supra.

The defendant, so styled as the administrator of the estate, filed demurrers, but those demurrers do not go to the point that the complainant makes no allegations with reference to the requirements of sections 211 and 214, supra. There were several amendments to the complaint also filed which are in the same status in that respect. Finally pleas were filed by the defendant, which in addition to the general issue, set up a failure to comply properly with sections 211 and 214, supra, in that, the claim as filed did not meet its requirements. After demurrers to said pleas had

322

been overruled, plaintiff filed a replication thereto showing that pending the time when the pleadings in this cause were being settled and determined by the court, and on, towit, November 2, 1946, plaintiff amended said claim or statement of claim theretofore filed by presenting an amended claim or statement thereof, a copy of which was attached and made a part of the replication. The defendant demurred to said replication upon the ground that the plaintiff had no legal right or authority under sections 211 and 214, supra, to amend a defective claim in an attempted compliance therewith, and that the amendment of the claim of the plaintiff then filed could not be considered as a compliance with sections 211 and 214, supra. The court overruled said demurrer, and issue was taken.

Upon the trial by a jury on the issue made, consisting of the general issue to the complaint and the pleas and replication, mentioned above, there was a verdict for the plaintiff, assessing the damages at $120,000. The court thereupon ordered and adjudged that she have and recover of the defendant $120,000, and costs, and ordered execution. After overruling a motion to set aside the judgment and for a new trial, and on motion of defendant, the court amended the judgment theretofore rendered by eliminating "therefrom the provision that execution issue for the amount of damages assessed by the jury in this cause."

The first matter presented for the attention of the court in this case is the sufficiency of the claim as filed by plaintiff against the estate on July 27, 1945, within the period of six months after the issuance of letters of administration: claimant contending that the claim so filed was sufficient; but that if it is found not to be sufficient, then that she had the right to amend the claim, as she did on November 2, 1946, pending the appeal by giving more detail with respect to the nature of her claim.

Attention is called to the fact that under section 216, supra, as amended, the notice required to be given should specify that the claim is disputed in whole or in part, and if in part specify the part disputed. The notice which was given stated that the claim was disputed in whole, and sought to have determined the validity of it.

We do not here consider the question of whether such a notice is sufficient to present an issue to determine whether the claim as filed was sufficient under sections 211 and 214, supra.

But this case was tried on appeal on that issue without any question being raised as to whether the notice given by the administrator presented it.

The argument of counsel in the particular matter now under consideration is directed first to the sufficiency of the claim as filed July 27, 1945, and then to the right of the claimant to amend such claim pending the hearing and after the expiration of six months, as was attempted to be done on November 2, 1946.

The nature of plaintiff's claim, as set out in the amended complaint, and in the amendment to the written claim as filed, is in substance that she and the deceased during the month of June 1940 made a verbal agreement, by which she agreed to give up her position and cease working at the Saenger Theater in the city of Mobile, where she was then and there gainfully employed, and to move from Spring Hill to an apartment or residence in the city of Mobile, and thereafter to render services and attention to the said Hunter during his remaining lifetime as an attendant or friend, in consideration of which he agreed to make a will by the terms of which she would at his death be bequeathed by him, or receive from his estate thereunder, a sum equal to one-fifth of the value of said estate at the time of his death, which agreement and services were performed on her part, and which were not performed on his part.

We have held that agreements of this kind, when they are not within the statute of frauds, or when the statute of frauds has been complied with, are binding, and "create an equitable right in the nature of a trust enforceable against the personal representative of the deceased as a covenant to stand seized to the use of the promisee." And that "if one in such manner agrees to provide a legacy out of his estate, or a certain sum so payable at his

death, his personal representative succeeds to the estate of decedent encumbered with a burden in the nature of a trust to pay the same as contracted by decedent. Such a right being contractual, is not affected by a will or its probate. (While in life he may dispose of his estate.) "But out of what he leaves, which descends or is subject to his will, he has bound himself for a valuable consideration, effective against his personal representative, that his promisee shall have a stipulated sum. He has thereby created a trust on his descendable property to that extent." Those principles have been repeatedly reaffirmed. Hendrix v. Pique, 237 Ala. 49, 185 So. 390; Stone v. Burgeson, 215 Ala. 23, 109 So. 155; Allen v. Bromberg, 147 Ala. 317, 41 So. 771; Bolman v. Overall, 80 Ala. 451, 2 So. 624, 69 Am.Rep. 107; Manning v. Pippen, 86 Ala. 357, 5 So. 572, 11 Am. St.Rep. 46; Walker v. Yarbrough, 200 Ala. 458, 76 So. 390; Taylor v. Cathey, 211 Ala. 589, 100 So.2d 834; Mayfield v. Cook, 201 Ala. 187, 77 So. 713; Poe v. Kemp, 206 Ala. 228, 89 So. 716; Richards v. Williams, 231 Ala. 450, 165 So. 820; Cox v. Hutto, 216 Ala. 232, 113 So. 40; Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190; Vickers v. Pegues, 247 Ala. 624, 25 So.2d 720.

■ A claim for damages for the breach of a contract is also an alternative remedy available to her, Bolman v. Overall, supra, 80 Ala. at page 455, 2 So. 624, 69 Am.Rep. 107; Taylor v. Cathey, supra; Poe v. Kemp, supra; Richards v. Williams, supra; Stone v. Burgeson, supra, and an account for services rendered on a quantum meruit. 68 Corpus Juris 590, section 208, notes 30 and 32; 5 Corpus Juris 1386, Section 17; 7 C.J.S., Assumpsit, Action of, § 9.

■ The claim undertakes to set up facts and alleges that claimant, by virtue of said agreement, is entitled out of his estate to a sum of money equal to one-fifth of its value at the time of his death. Such a claim is enforceable at law, as well as in equity. Hendrix v. Pique, supra.

The statute requires "all claims against the estate of decedent" to be presented in six months after grant of letters. It does not specify the manner in which such claim shall be described, except by section 214, supra, that it shall be a "verified claim or a verified statement thereof," with direction as to the nature of the verification.

■ But the principle has now been firmly established that it need not be "as specific as formal pleadings, but should be sufficiently definite to inform the administrator of the nature and amount of liability it imposes, and distinguish it with reasonable certainty from all similar claims." Moebes v. Kay, 241 Ala. 294, 2 So.2d 754, 755, 757; Watson v. Hamilton, 210 Ala. 577, 98 So. 784; Metcalf v. Payne, 214 Ala. 81, 106 So. 496; Foster v. Foster, 219 Ala. 70, 121 So. 80; Burns v. Burns, 228 Ala. 61, 152 So. 48; Floyd v. Clayton, 67 Ala. 265; Smith v. Fellows, 58 Ala. 467; Bibb v. Mitchell, 58 Ala. 657; Roberts v. Grayson, 233 Ala. 658, 173 So. 38; First National Bank v. Henderson, 243 Ala. 636, 11 So.2d 366.

In the case of Buchmann v. Turner, 221 Ala. 563, 130 So. 196, the original record shows an item of the claim presented as "for $720.00 due for labor and on contract of hire for year of 1927,—$720.00." The complaint on that claim was for money due by account, and in Code form. The trial court permitted an amendment of the claim so as to change and correct the date of the beginning and ending of the contract. This Court observed that thereby the cause of action was not changed and no new item added, but merely a change in the descriptive dates of the contract, and committed no error in allowing the amendment of the claim. It does not seem to have been supposed that the original claim was not sufficiently described, but an erroneous description in it was allowed to be corrected, and a recovery was affirmed.

Not now dealing with the amendment which was made in the instant case, we wish to analyze the claim as originally filed to meet the requirements specified above as illustrated in the Buchmann case, supra. It must be sufficient, we repeat, as "to inform the administrator of the nature and amount of liability it imposes, and distinguish it with reasonable certainty from all similar claims."

The claim filed July 27, 1945, does specifically state the amount of it, and that it is due by an agreement with deceased that she was to receive a sum equal to one-fifth of the value of his estate, and that she had performed her part of the agreement, and (that it was) for services rendered.

Some defects may be suggested: (1) It does not give the date of the agreement; nor (2) the substance of its terms; nor (3) definitely when it was payable; nor (4) the nature of the services rendered.

Formal pleading may call for such details. They were supplied in the amendment to the claim which was filed November 2, 1946, during the progress of the trial. In the Buchmann case, supra, the only description of the nature of the claim was that it was for labor on a contract for hire during a certain named period of time. The instant claim is in substance that by agreement she was to have a sum equal to one-fifth of his estate for services rendered. By his "estate" it reasonably means that the valuation is at the time of his death. Use of the word "estate" in that connection carries that idea. It states that she performed her part of the agreement, and rendered services presumably as the consideration of the agreement. So that we have an undated agreement, upon valuable consideration for a specific right to be available after his death. While good pleading would not be satisfied on demurrer in an action at law on such a contract, it does inform the administrator of its nature and amount and of such distinctive elements as that it is different from other such claims. It would support a judgment by default in an action at law. It is quite as sufficient as in the Buchmann case, supra. The amendment made it as definite and certain as good pleading would require, and added nothing to the amount, and made no change in the matters originally set forth, except to make them more definite. Such is the true province of an amendment. As a claim the amendment was not needed in the instant case, as it was not in the Buchmann case, supra, except to make it accurate. Wise v. Outtrim, 139 Iowa 192, 117 N.W. 264, 130 Am.St.Rep. 301.

The fact that section 214, Title 61, Code, authorizes amendments to the affidavit is not conclusive that some other sort of amendment may not be made to a claim after six months when the amendment only makes certain or accurate some descriptive features of it.

If a claim as filed is fatally defective in substance so as not to be sufficient when tested by the rule we have stated, it could not, we think, be vitalized by an amendment after six months, not now considering the affidavit under section 214, supra. 34 C.J.S. Executors and Administrators, § 417, notes 1 to 4.

The so-called complaint as filed in the circuit court on motion of the administrator is in essence nothing but an amended claim under sections 211 and 214, supra. It did no more than to elaborate on the claim as originally filed, making more definite matters set up in that claim, and was proper on which to formulate an issue in the circuit court on the contest for determination and declaration as to the validity of the claim.

The trial court held in overruling the demurrer to defendant's plea that the claim of July 27, 1945, was fatally defective, and in overruling the demurrer to the replication held that the amended claim gave it full force and effect. We rest our conclusion on the theory that the claim filed July 27, 1945 was not fatally defective, and the amendment was needed only as an aid to formulate the issues on the contest. The result is that the rulings of the court, though not exactly in accordance with our views, were not prejudicial to appellant on that question.

We have held that the proceeding under section 216, supra, as amended, was not intended to lead to a personal judgment, but was only for the purpose of declaring a status. It is in the nature of a declaratory judgment to determine the validity of the claim which has been filed against the estate. Tillery v. Commercial Bank, 241 Ala. 653, 4 So.2d 125; Hicks v. Ward, 240 Ala. 236, 198 So. 705; Gant v. Gilmer, 245 Ala. 686, 18 So.2d 542; 34 Corpus Juris 292, 293; 49 C.J.S., Judgments, § 276.

The judgment in this case was that plaintiff have and recover of defendant. On such a judgment an execution is due to issue ipso facto, and without an order to that effect. Sections 506, 508, Title 7; section 130, Title 61, Code. The elimination of such order from the judgment does not serve to prevent the issuance of execution on it. This is a special statutory proceeding, and the notice filed by the administrator should be treated as merely to quicken the power of the probate court (or other court administering the estate) under the statute. On appeal the jurisdiction is not enlarged by statute. The procedure and decree in the probate court were in form as contemplated by the statute. Considering that it is to test and determine an actual dispute or controversy as to the validity of the claim, the more appropriate course on a contest is for the claimant to supplement her claim as filed by such additional detail as may be adequate to conform to good pleading, and for the objector or contestant to set out the facts or legal principles on which his contention is founded: all of which is somewhat in the nature of a statutory proceeding for a declaratory judgment, of which this case is a species.

The parties and court tried this case in the circuit court on appeal as if it were a common law action begun as such. To that extent it does not conform to section 216, supra, but we see no reason why the parties cannot with the consent of the court convert it into such an action and have a personal judgment accordingly rendered. We will therefore not disturb it on account of its nature.

As shown by the face of the pleading, the issue of fact set up by the administrator was made by the general issue. There was no plea which expressly made the point that the consideration was in part immoral and against public policy; but under our system special pleading was not necessary to do so. Shearin v. Pizitz, 208 Ala. 244, 94 So. 92; Garber v. Yeend, 245 Ala. 509, 17 So.2d 875.

The two questions of fact submitted to the jury were (1) whether such a contract as claimed was in fact made; and (2) whether any part of the consideration of it was sexual illicit relations between the parties, either prior to it or to be performed thereafter.

Errors are claimed to have occurred on those questions by the refusal of affirmative charges, on the theory that the evidence of the existence of the contract was insufficient to go to the jury, and, if so, that it showed an illegal consideration as a matter of law. We do not think that the first contention needs discussion, because the evidence was in our opinion sufficient in that respect. As to the second contention, certain principles of law are applicable.

There is ample authority to the effect that a promise by the claimant as set out in the amended claim, and in the claimant's pleading in the circuit court, is in terms and on its face such a valuable consideration as will support an agreement on the part of decedent as claimant insists. Such was the legal effect of the agreements held sufficient in several of our cases. Bolman v. Overall, supra; Taylor v. Cathey, supra; Cox v. Hutto, supra.

It is well understood that if illicit sexual relations to occur in the future were a part of the consideration, expressed or implied, the promise by Hunter being executory, will not be enforced at law or in equity. Walker v. Gregory, 36 Ala. 180; Potter v. Gracie, 58 Ala. 303, 29 Am.Rep. 748.

A contract in consideration of past cohabitation intended and regarded as reparation or indemnity for the wrong done is treated at common law as founded on a good (not valuable) consideration. If the contract is executory it stands on the footing of contracts having only the performance of a natural or moral duty as a consideration to support them. Potter v. Gracie, supra; Hill v. Freeman, 73 Ala. 200, 49 Am.Rep. 48; Clark v. Colbert, 67 Ala. 92.

When plaintiff cannot establish his cause of action without relying on an illegal contract, he cannot recover. Gunter v. Leckey, 30 Ala. 591; Walker v. Gregory, supra; Ware v. Curry, 67 Ala. 274; Yarborough v. Avant, 66 Ala. 526.

A contract to devise or bequeath property in return for support or care, or other legitimate personal service, is enforceable after the services are rendered, but only after the death of the promisor. Bolman v. Overall, supra; Poe v. Kemp, supra; Stone v. Burgeson, supra; Cox v. Hutto, supra; Vickers v. Pegues, supra; 58 Corpus Juris 1063, section 312.

The fact that illicit relations occurred before and after such an agreement is made, which did not express that as a feature of the consideration, but expressed some other lawful promise, is not conclusive that it formed a part of the consideration. Burdine v. Burdine, 98 Va. 515, 36 S.E. 992, 81 Am.St.Rep. 741; Bowling v. Bowling, 222 Ky. 396, 300 S.W. 876.

Illegality of consideration will not be inferred when the evidence can reasonably and justly be reconciled with the hypothesis of legality. Ware v. Jones, 61 Ala. 288; Williams v. Wilson, 210 Ala. 289, 97 So. 911; Marengo Abstract Co. v. C. W. Hooper & Co., 174 Ala. 497, 56 So. 580, Baker v. Lehman, Weil & Co., 186 Ala. 439 (11), 65 So. 321.

"While it is the province of the court to construe written contracts, where the meaning is to be collected from the writing without the aid of evidence aliunde, yet where the meaning, the intent of the parties, depends upon the ascertainment of facts aliunde the instrument, this 'admixture of parol and written evidence draws the whole to the jury requires the submission of the issue to, the deduction of the inference of fact by, the jury." Lutz v. Van Heynigen Brokerage Co., 199 Ala. 620, 75 So. 284, 288; Boykin v. Bank of Mobile, 72 Ala. 262, 47 Am.Rep. 408; Dozier v. Vizard Investment Co., 203 Ala. 421, 83 So. 572.

Such is the status of this question, except that the contract was verbal. But whether in writing or verbal, if its terms do not as a matter of law necessarily mean that it is founded on an illegal consideration, but whether it is so or not, is dependent upon collateral matter from which an inference in that respect is to be drawn, it becomes a jury question.

On that question, the court carefully and correctly charged the jury as follows: "The court charges you that although two people might engage in immoral relations one with the other, that does not in itself preclude them from entering into a valid and binding contract, provided that as a part of the consideration of that contract is not included the beginning or continuation of any immoral or illicit relations. In other words, a man and woman might engage in immoral acts, but that does not in itself preclude them from contracting with each other the same as any other two persons might contract with each other, but if the contract that they entered into has a part of its consideration the beginning of or the continuation of immoral sexual relations, then under the law such a contract would be construed as against public policy and would be void. If that contract did not have as a part of its consideration sexual intercourse to be engaged in in the future, why then the parties could enter into a valid contract, and the contract would be binding, irrespective of what had been the prior relationship of the parties. There is a further proposition, gentlemen, with reference to that matter, that is that parties may enter into a valid contract, based upon valid consideration, that is, valuable consideration, and after the execution of that contract they may conduct themselves in an immoral and illegal way in carrying that contract into effect, but in the event that the contract at the time that it was originally made was valid, based upon valuable consideration, why then the actions of the parties thereafter in carrying the contract into effect, although they might be immoral, that would not in itself invalidate the contract; but the jury has the right to consider the actions of the parties after the entering into of the contract, with a view of determining what was the real consideration at the time it was entered into."

The court also charged the jury in writing, at the instance of appellant, that a contract made in violation of the principles of morality and chastity is void and no relief can be granted under it. And if her contract was for the purpose of continuing or maintaining illicit relations with

Mr. Hunter, plaintiff cannot recover in this cause. This was a jury question on the evidence in this case, and was properly submitted to them.

Appellant also earnestly insists that the affirmative charge should have been given against appellee because the contract claimed by her was based at least in part upon a consideration which tended to encourage the severance of the existing marriage relationship of one or both of the parties, or to prevent a reconciliation between them and their spouse, whether or not illicit sexual relations were intended as a part of the consideration.

At that time, as now, a cause of action for damages for alienating the affections of a spouse did not exist in Alabama. General Acts 1935, page 780, section 115, Title 7, Code; Young v. Young, 236 Ala. 627, 184 So. 187. But the effect of that statute was not to disturb other remedies which a spouse had to put a stop to such conduct as would probably have that effect; nor in any manner sanction it. She could have enjoined them in equity if she was so affected by them. Henley v. Rockett, 243 Ala. 172, 8 So.2d 852. Evidence of any actual disturbance of such relations or complaint of them by Mrs. Hunter afterwards occurring was not attempted to be shown, not now considering the question of its admissibility.

■ We think the principle stated in some of the cases is sound to the effect that "all agreements which are supported by a consideration or an inducement tending to encourage the severance of the marriage relationship are abhorrent to public policy, and are therefore illegal and unenforceable." Gould v. Gould, 261 App. Div. 733, 27 N.Y.S.2d 54, 56; In re Rhinelander's Will, 264 App.Div. 607, 36 N.Y.S.2d 105; Roth v. Patino, 185 Misc. 235, 56 N.Y.S.2d 853, 854.

This principle is not exactly the same as that which strikes down a contract which is based on a consideration involving sex relations, although they both are grounded on public policy. One has as its basic element the disruption of the marriage relation, the other is regardless of any marital relation, and is based on prin-

ciples of morality and decency. A contract based on a consideration of improper sex relations may also tend to disrupt the marital relations of the parties, and thereby violate both principles. But a contract may be based on a proposed course of improper conduct as its consideration which though not involving sex relations, yet has a reasonable tendency to encourage a severance of the marriage relationship. Such was the status in the case of Roth v. Patino, supra, in which the woman agreed during the remainder of her natural life "to devote all or substantially all her time to defendant; to account to him for all her waking moments; to be at his beck, call and direction as he should desire; to consider and act towards him as if he were her father; to obey his wishes as to her deportment, conduct, habits, associations, friends, time, entertainment and education; to act as his companion at all times requested by him; and to accompany him to various places," and then at the end is added "so long as none of the foregoing were not inconsistent with the relationship of the plaintiff to her husband." They were both married. Defendant about eighty years old, and plaintiff was twenty years old. He was to give her $1,000 a month. The court held that the contract was "so directly and completely inconsistent with and destructive of plaintiff's marriage, and defendant's as well, as to be utterly void in our system of morals." The case was affirmed by the Appellate Division (270 App.Div. 927, 62 N.Y.S.2d 820), with one judge dissenting. Appellee does not attack the principle of that case, nor its application to the facts there shown, but challenges its application to this one.

■ In this case the evidence supporting the contract was "that he had asked he to leave her place at the Saenger (Theater) and if she would do that, take a residence or apartment in Mobile where he could come at all times, when she could serve him as a constant companion and friend as long as he lived."

We are asked to say as a matter of law that the contract called for improper conduct which tended to disrupt marriage relationships, and was void under the principle declared above. We do not think it

is as clear and plain as was the contract in the Roth case, supra. It could have been intended to call for services which were legitimate and reasonable, and which should not have that effect, or for services of a different sort tending to disrupt the marital relations of the parties. Whether it reasonably had such tendency was an inference for the jury, just as it was for the jury to say whether sex relations were intended to be maintained as a consideration of the contract.

The court did not charge the jury on the matter involved in the contention now being considered, and was not requested by appellant to do so. Several charges were given at appellant's request on the effect of illicit sexual relations in addition to the clear and accurate oral charge of the court on that question. But appellant contends that as a matter of law the contract in the light of attendant facts shown by the evidence should be held to have a tendency to disrupt one or both the marital relations, so that it is void as a matter of law, and on that theory that the affirmative charge should have been given.

We cannot sustain the contention made by appellant in this respect.

The assignments of error numbered 40 and 41 are predicated upon the refusal of charges 17 and 32. We think charge 17 invades the province of the jury and is argumentative in calling their attention to the fact that such a contract is regarded with suspicion,—see Johnson v. State, 223 Ala. 332, 135 So. 592,—and charge 32 is erroneous in requiring that such a contract must be established in a suit at law by clear, satisfactory and convincing evidence beyond a reasonable doubt.

We think the general rule in trials at law in this State of a civil nature applies here.

There are cases where some of the words of those charges are used as expressive of the nature and weight of evidence as to such a contract, but those cases, such as Bolman v. Overall, supra, state a rule relative to specific performance of contracts in equity where a strict rule applies, and is not intended to be applicable in law actions based upon the contract when the rule is not strict as in equity. 69 A.L.R. 179, 180.

The court in given charges numbered 10 and 11, at the instance of appellant, did instruct the jury that to sustain such a contract the evidence of it must be clear, satisfactory and convincing.

The charges numbered 17 and 32 were refused without error.

There was no reason for giving the affirmative charge for appellant, and the motion for a new trial was properly overruled. The verdict was well supported by the evidence, and no error prejudicial to appellant appears.

Affirmed.

All the Justices concur.