138 So. 828

### CARLISLE v. CHAMPION.
#### 4 Div. 550.

Supreme Court of Alabama.

Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

**THOMAS, J.**

The action is for work and labor done by Miss Eula Champion for Mrs. Elizabeth Champion, deceased, and is brought against the personal representative of the latter's estate.

The evidence shows that Mr. and Mrs. Champion were married about the year 1896; that Miss Eula Champion was the daughter of Mr. Champion and the stepdaughter of Mrs. Champion, and at the time of the Champion marriage she was about fourteen years of age. Mr. and Mrs. Champion lived together as man and wife for about fifteen years (until about 1911), and to his death. Miss Eula Champion lived with them as a member of the family, was supported by her father until his death, and thereafter Mrs. Elizabeth Champion and Miss Eula Champion lived together until the former's death in 1927. There was no visible change in the association or relationship which existed in the family after Mr. Champion's death, from that which had existed previous to his death. Mr. Champion left an estate, consisting of an insurance policy, payable to Mrs. Champion, a little money, and other personal property. The two women lived in a home owned by Mrs. Champion, on an income from the property left by Mr. Champion, and from their own labor in their garden and store and with chickens and cows. The last years of Mrs. Champion's life she was in declining health, and during that period practically the entire burden of looking after the home, cows, chickens, garden, and small store, and the additional burden of nursing Mrs. Champion, devolved upon and was discharged by Miss Eula Champion. She had no estate of her own and no independent income, and was dependent upon her labor and the relation with the decedent for the necessities of life and the shelter of a home, under the election that was made for and by her as we shall indicate later in the opinion.

This suit is for services rendered by Miss Eula Champion (plaintiff) to the decedent during the last three years of her life and illness. The plaintiff was reared by the intestate, and it is insisted by appellant that she occupied the same relationship during the three years, for which recovery is sought. During the period from 1896 to 1927, she had lived continuously in the Champion's home and had received maintenance and support.

Was there testimony offered to support or show an implied contract, in that the plaintiff relied upon statements made by Mrs. Champion as to what she would do for her before and after her death, if she remained with, her? The testimony was detailed by two witnesses, as follows: Mrs. Foster testified in substance that: "In the company of Mr. Foster, just after my father's (Mr. Champion's) death, I had a conversation with Mrs. Champion; at that time I offered her (the plaintiff) a home. Mrs. Champion said she could go if she wanted to but if she went she went without a penny, but if she stayed with her she would be provided for as long as she had a penny; she said if there was a penny left after she was dead she would see that Eula was provided for. This was immediately following my father's death. I had several conversations with my father just before he died; he had an insurance policy and several hundred dollars in the bank. Mrs. Champion was present when this conversation was had with witness and her father. In the presence of Mrs. Champion I asked him to change his insurance policy so that Eula would be provided for after his death, and she (Mrs. Champion) asked him not to do it, and she said she would promise him that she would see that Eula was provided for as long as she had a penny. Mr. Foster and plaintiff were likewise present when this conversation took place."

Mrs. Davis testified in substance that: "In the presence of Miss Eula I had one conversation with Mrs. Champion about providing for her (Eula). Mrs. Champion was very sick that night. Miss Eula was worried and said: 'What will become of me when Mother is gone?' She was crying as she sat there by the fire, and I was sitting by Mrs. Champion's bed, holding her hand. Mrs. Champion said: 'Eula, don't worry, I'm going to leave you what I've got, you're the only one that has stuck to me and I'm going to stick to you.'" The witness Davis further testified that she "talked to Mrs. Champion lots of times and she always said that she intended to care for Eula, and told me she was going to leave Eula her property in her life time unless she married. She was always nervous when she talked to me about those things and thought she was going to die."

The constant labors of Miss Eula for Mrs. Champion to the time of her death are likewise shown by Dr. Franklin, Mrs. Radford, Mrs. Foster, and Mrs. Davis.

Mr. Carlisle testified to a conversation to contrary import, in substance as follows: "Eula said she was throwing her life away there waiting on her and she might be doing something, and Mrs. Champion told her well, if she didn't want to stay there she was at will to go when she got ready; that she could get along somehow; that she could get somebody else to wait on her. I didn't hear her say anything about sharing things

with her; there was nothing said in regard to payment for services; Miss Eula never made any claims for her services. I think I heard, shortly after Mrs. Champion's death, Miss Eula make a statement in reference to a conversation which she had had with (an attorney); I think I heard her say that she told (the attorney) that there wasn't any contract but she was asking for the money that was due her; she said she was asking for the money for her services but there wasn't any contract she knew, by which she could go, but she was asking for the services because she felt like it was due her; she made the positive statement that she had told him that there was no contract, I heard that. I said Mrs. Champion got that home out there as a part of my father's estate; I think the value of that place was about seven hundred and eighty dollars, or something like that, that was what they valued it at in the settlement."

It may be further said the evidence shows that the plaintiff was maintained by the Champions from the time she was about thirteen or fourteen years of age, and that she did not present Mrs. Champion with any statement of her account for the services rendered during Mrs. Champion's lifetime. And that Mrs. Champion left a small estate consisting chiefly of a real estate mortgage, the house and lot .in which she resided, and her furniture and a few other effects.

The defendant gave in evidence the will of Mrs. Elizabeth Champion, and by the terms of that will and testament she devised her property, subject to the payment of debts, as follows: "To my beloved stepdaughter, Eula Champion, for her sole and separate use, without right to sell, mortgage or otherwise convey, all of my household and kitchen furniture, including china, glass and silverware, except one bedstead and bed furnishing thereof," and provided, in the event of Eula Champion's marriage, for other disposition to devisees and legatees named, and in the event of her death before marriage, to the named beneficiaries; and provided further for the "said Eula Champion, so long as she shall remain single, subject to the provisions hereinafter made, the interest, income or profit arising out and from the sum of Two Thousand Dollars, or as much thereof as shall remain unexpended by me, or a part of the corpus of my estate, which is now on loan to A. H. Feagin, until my death and secured by real estate mortgage." The rest and residue of her estate, including the house and lot in which she resided, was devised to Pompey W. Carlisle by paragraph 7 of the will.

It is insisted by appellant that the reason for the distribution of the property by the will is evidenced by its contents, which show that everything which she received from Mr. Champion, her husband, was devised to Miss Eula Champion, her stepdaughter; the house and lot were purchased with money from the estate of her (Mrs. Champion's) father, Mr. Carlisle, and this was devised to the Carlisles. The evidence showed, as to the amount or extent of her estate, that what she left consisted of this house and lot, the real estate mortgage, and her furniture; there being about sufficient cash on hand to pay up her indebtedness.

In Mayfield v. Cook, 201 Ala. 187, 77 So. 713, 714, Mr. Justice Somerville declared that one who is sui juris may, for a valuable consideration, "renounce the absolute power to dispose of his estate at pleasure, and bind himself by contract to dispose of his property by will to a particular person, and that such contract may be enforced in the courts after his decease * * * by an action for its breach * * * or, in a proper case, by bill in the nature of specific performance," etc. See, also, Manning v. Pippen, 86 Ala. 357, 5 So. 572, 11 Am. St. Rep. 46; Bolman v. Overall, Ex'r, 80 Ala. 451, 2 So. 624, 60 Am. Rep. 107; Lowery v. Pritchett, 204 Ala. 328, 85 So. 531.

When the evidence is considered and the agreement of Mrs. Champion with the appellee in the conversation detailed by Mrs. Foster, as to future maintenance and provision for her (plaintiff) at the death of Mrs. Champion, and that by Mr. Champion and Mrs. Davis as to the change of the insurance policy for Eula's benefit, and Mrs. Champion's objection to that change and the promise to care for Eula during life and to provide for her at death, and the election made by plaintiff under such understanding, it did not amount to a contract that bound her to pay the appellee a sum that was the equivalent of the reasonable value for services rendered testatrix during the last three years of declining health. There was error in declining the general affirmative charge requested by defendant on the authority of Patterson v. Carter, 147 Ala. 522, 41 So. 133. There was no promise, express or implied, to pay for services rendered, other than to provide for plaintiff after the death of Mrs. Champion, and the latter did provide for plaintiff by will indicating the intent of Mrs. Champion not to compensate by way of any contract, express or implied.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.